DA 10-0209

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 51

BITTERROOT RIVER PROTECTIVE ASSOCIATION,

       Plaintiff and Appellee,

MONTANA DEPARTMENT OF FISH, WILDLIFE AND PARKS,

       Involuntary Plaintiff,

    v.

BITTERROOT CONSERVATION DISTRICT,
a political subdivision of the State of Montana,

       Defendant,

WALTER R. BABCOCK, BITTERROOT SPRINGS RANCH,
TUCKER CROSSING RANCH, and VALLEY SPRINGS RANCH,

       Intervenors/Third Party Plaintiffs and Appellants,

MARNELL CORRAO ASSOCIATES, INC.,

       Intervenors/Third Party Plaintiff and Appellant,

JOHN & KATHY LEWIS, MILLIE & CASEY DIEFFER,
EDITH L. & SKIP WARK, EDWIN C. & JUDITH
HEBNER, SUSAN A. & LARRY LEVENSTEIN,
MICHAEL & PAULETTE SPAULDING, EVELYN
L. LOCKE, DAVID J. ODELL, GREG & NANCY
TRANGMOE, JOHN & PATRICIA COOK, JOHN &
ELIZABETH FOX, ETNA DITCH COMPANY,
WEBFOOT DITCH COMPANY, and UNION DITCH
COMPANY,

       Intervenors and Appellants,

MONTANA FARM BUREAU FEDERATION,

       Intervenors,

v.

RAVALLI COUNTY COMMISSIONERS,

  Third Party Defendant.

_____

APPEAL FROM:  District Court of the Twenty-First Judicial District,
       In and For the County of Ravalli, Cause No. DV 03-476
       Honorable Robert L. Deschamps, III, Presiding Judge


COUNSEL OF RECORD:

  For Appellants:

    John E. Bloomquist, Abigail J. St. Lawrence; Doney, Crowley,
    Bloomquist, Payne, Uda, P.C.; Helena, Montana (Attorneys for Walter R.
    Babcock, et al. and John and Kathy Lewis, et al.)

    John Warren; Davis, Warren & Hritsco; Dillon, Montana (Attorneys for
    Marnell Corrao Associates, Inc.)

  For Appellee:

    Sarah K. McMillan; Western Environmental Law Center; Helena,
    Montana
    Jack R. Tuholske; Tuholske Law Office, P.C.; Missoula, Montana
    (Attorneys for Bitterroot Protective Association, Inc.)

_____

        Submitted on Briefs: November 17, 2010

             Decided: March 22, 2011


Filed:

   _____
         Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellants Walter R. Babcock, et al., John and Kathy Lewis, et al. (referred to collectively as "Landowners"), and Marnell Corrao Associates, Inc. ("Marnell") appeal from the order entered by the District Court for the Twenty-First Judicial District, Ravalli County, awarding Appellee Bitterroot River Protective Association, Inc. ("BRPA"), attorney fees in the amount of $319,405.65. We affirm and remand. Appellants raise two issues, which we restate as follows:

¶2 ***1. Did the District Court lose jurisdiction to rule on BRPA's motion for attorney fees by operation of M. R. Civ. P. 59(g)?***

¶3 ***2. Did the District Court abuse its discretion by awarding attorney fees to BRPA under the private attorney general doctrine?***

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 This is the third appeal to come before the Court regarding the Mitchell Slough, a stream running adjacent to the Bitterroot River in Ravalli County. *See Bitterroot River Protection Ass'n v. Bitterroot Conservation Dist.* (*BRPA I*), 2002 MT 66, 309 Mont. 207, 45 P.3d 24; *Bitterroot Protective Ass'n v. Bitterroot Conservation Dist.* (*BRPA II*), 2008 MT 377, 346 Mont. 507, 198 P.3d 219.

¶5 In *BRPA II*, we concluded that "the Mitchell Slough qualifies as a natural, perennial-flowing stream" under the Natural Streambed and Land Preservation Act of 1975 (the "310 Law"), and that "the Mitchell Slough is subject to stream access and public recreation" as provided by Montana's stream access law (the "SAL"), reversing contrary conclusions entered by the District Court. *BRPA II*, ¶¶ 47, 85. We remanded

3

"for entry of a judgment in favor of BRPA" and the Montana Department of Fish, Wildlife and Parks ("FWP"). *BRPA II*, ¶ 85.

¶6    On remand, BRPA petitioned for attorney fees under the private attorney general doctrine and the Montana Uniform Declaratory Judgments Act ("UDJA"). BRPA's request was based upon the time expended from 2003-2009 on the issues litigated in *BRPA II*, and sought fees from the intervening parties and the Bitterroot Conservation District ("BCD").

¶7    The District Court[1] bifurcated the attorney fee issue from the proceedings it conducted to enter judgment on the merits. The District Court filed judgment in favor of BRPA and FWP on July 20, 2009, stating therein that it "reserves jurisdiction to determine whether Plaintiffs are entitled to costs and attorney's fees which shall be determined separately." After BRPA filed its petition for fees, the court conducted a hearing on entitlement to an award on September 8, 2009. On November 27, 2009, the court issued an order awarding fees against Landowners and Marnell, but denying fees as to the BCD. The District Court held a separate hearing on the reasonableness of fees and on March 25, 2010, issued an order awarding fees to BRPA in the amount of $319,405.65. Landowners and Marnell appeal.

**STANDARD OF REVIEW**

¶8    A challenge to the jurisdiction of a district court to enter a post-judgment award of attorney fees is reviewed for correctness as a question of law. *See Associated Press v.*

---

[1] On remand, Judge Robert L. Deschamps, III, assumed jurisdiction over the matter, as Judge Ted L. Mizner had retired.

*Crofts*, 2004 MT 120, ¶ 12, 321 Mont. 193, 89 P.3d 971. Jurisdictional issues are a "well-established" exception to the general rule that this Court will not address an issue that is raised for the first time on appeal. *State v. Martz*, 2008 MT 382, ¶ 20, 347 Mont. 47, 196 P.3d 1239.

¶9 The parties contest the standard of review for an award of fees under the private attorney general doctrine. BRPA argues that the standard is abuse of discretion, while Landowners argue that entitlement to an award of fees under the doctrine is a question of law, while the amount of the award is reviewed for abuse of discretion. We formally adopted the doctrine in *Montanans for the Responsible Use of the School Trust v. State ex rel. Board of Land Commissioners* (*Montrust*), 1999 MT 263, ¶¶ 64-69, 296 Mont. 402, 989 P.2d 800, wherein we concluded that the district court had abused its discretion in denying plaintiff's request for fees. We noted that an award of fees is "within the discretion of a district court." *Montrust*, ¶ 68 (citing *Joseph Russell Realty Co. v. Kenneally*, 185 Mont. 496, 505, 605 P.2d 1107, 1112 (1980)). Accordingly, subsequent cases have employed an abuse of discretion standard in reviewing the grant or denial of attorney fees under the doctrine. *See Baxter v. State*, 2009 MT 449, ¶ 46, 354 Mont. 234, 224 P.3d 1211 (citing *Trs. of Ind. Univ. v. Buxbaum*, 2003 MT 97, ¶ 15, 315 Mont. 210, 69 P.3d 663); *Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 2007 MT 183, ¶ 87, 338 Mont. 259, 165 P.3d 1079; *see also Hernandez v. Bd. of Co. Commrs.*, 2008 MT 251, ¶ 30, 345 Mont. 1, 189 P.3d 639 (noting that "the 'private attorney general' theory permits an

award of attorney fees, *in the discretion of the court*" (emphasis added) (citing *Montrust*, ¶ 66)).

¶10 Within the factors we have adopted for consideration of a fee award under the doctrine, there are determinations which are essentially legal in nature and which can weigh significantly on the outcome. For example, as we said in *Baxter*, the doctrine "applies only when constitutional interests are vindicated." *Baxter*, ¶ 47. However, the ultimate determination based upon application of all the factors is reviewed for abuse of discretion, as we also stated in *Baxter*. *See Baxter*, ¶ 46. Evident from our reliance on *Buxbaum* in *Baxter*, we have reviewed district court determinations regarding private attorney general doctrine fees under the same standard of review we use for fee determinations pursuant to the UDJA, § 27-8-313, MCA, where the district court has discretionary authority to make an award of attorney fees if "necessary or proper," *see Buxbaum*, ¶¶ 42, 46, and which we review for abuse of discretion. *Renville v. Farmers Ins. Exch.*, 2004 MT 366, ¶ 20, 324 Mont. 509, 105 P.3d 280.

¶11 We review the amount of fees awarded for an abuse of discretion. *See DiMarzio v. Crazy Mt. Constr., Inc.*, 2010 MT 231, ¶¶ 52-53, 358 Mont. 119, 243 P.3d 718. A district court abuses its discretion when "it acts arbitrarily, without employment of conscientious judgment, or in excess of the bounds of reason resulting in substantial injustice." *United Nat'l Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 2009 MT 269, ¶ 13, 352 Mont. 105, 214 P.3d 1260 (citing *Kuhr v. City of Billings*, 2007 MT 201, ¶ 14, 338 Mont. 402, 168 P.3d 615).

**DISCUSSION**

¶12    *1. Did the District Court lose jurisdiction to rule on BRPA's motion for attorney fees by operation of M. R. Civ. P. 59(g)?*

¶13    After denial of a petition for rehearing and issuance of remittitur, *BRPA II* was returned to the District Court on January 2, 2009.  BRPA filed a bill of costs which stated that it would seek "attorney fees through separate pleadings."   The court issued a scheduling order on April 13, 2009, for motions related to the entry of judgment, stating "[t]he Court will enter judgment on the Supreme Court Order, reserving jurisdiction to issue a final judgment on the issue of costs and attorney fees."  BRPA and FWP filed a motion for entry of a proposed judgment, and Landowners and Marnell filed objections to the proposed judgment, requesting a narrower judgment which would exempt certain portions of the Mitchell Slough from operation of the 310 Law and the SAL, and objecting to any suggestion of a fee award.   In its response, BRPA stated that "[a]rgument on the [attorney fee] issue at this juncture is premature.  At the scheduled time, BRPA will demonstrate the ample authority existing for seeking fees."

¶14    On July 20, 2009, the District Court filed the judgment incorporating our holdings in *BRPA II.*  The judgment stated that the court "reserves jurisdiction to determine whether Plaintiffs are entitled to costs and attorney's fees which shall be determined separately."  That same day the court filed an order scheduling a hearing on attorney fees, noting that the court "has entered judgment on the merits and now turns to the dispute over costs and fees."  FWP filed a notice of entry of judgment on July 21, 2009.  On August 6, 2009, BRPA filed a petition for fees under the private attorney general doctrine

and the UDJA. After hearing, the District Court issued an order on November 27, 2009, granting fees from Landowners and Marnell, but denying fees against the BCD. After further hearing, the court issued an order on reasonableness of the fees in March 2010.

¶15 Landowners and Marnell argue that the District Court was without jurisdiction to rule on fees in November 2009 because the fee request, as a motion to alter or amend a judgment, was deemed denied by operation of M. R. Civ. P. 59(g)[2] on October 6, 2009, or 60 days after the filing of the motion. They argue that the order granting fees must be reversed as in *Associated Press v. Crofts*, 2004 MT 120, ¶¶ 36-37, 321 Mont. 193, 89 P.3d 971, where we reversed a district court's post-judgment award of attorney fees for lack of jurisdiction when the award was entered beyond the 60-day time limit of Rule 59(g). BRPA argues that the District Court's July 20, 2009 judgment was expressly not a final judgment and thus Rule 59(g) does not apply to its fee petition. Landowners and Marnell reply that the July 2009 judgment was a final judgment, notwithstanding the "reservation of jurisdiction" language, because it finally determined all claims made in the underlying action, and a notice of entry of judgment was filed prior to the motion for attorney fees.

---

[2] M. R. Civ. P. 54(a) provides that "[a] judgment is the final determination of the rights of the parties in an action or proceeding and as used in these rules includes a decree and any order from which an appeal lies." Rule 59(g) establishes the time for ruling on a "motion to alter or amend the judgment," by incorporating the time limit for motions for a new trial under Rule 59(d), which must be ruled upon "within 60 days from the time the motion is filed." Thus, under Rule 59(g), a motion to alter or amend must be served "not later than 10 days after the service of the notice of the entry of the judgment," and "if the court shall fail to rule on the motion within the 60 day period, the motion shall be deemed denied."

¶16    Our cases addressing this issue have determined whether the judgment was final. In *Associated Press*, we observed that the district court's order "was a final determination of the rights of the parties to this action." *Associated Press*, ¶ 36. We have stated that "any decree which leaves matters undetermined is interlocutory in nature and is not a final judgment for purposes of appeal." *Kirchner v. Western Mont. Regional Community Mental Health Ctr.*, 261 Mont. 227, 229, 861 P.2d 927, 929 (1993). In *In re Marriage of Griffin*, 260 Mont. 124, 860 P.2d 78 (1993), we explained that for a decree to be final it must reserve "no further questions or directions for further determination." *Griffin*, 260 Mont. at 135, 860 P.2d at 85 (internal quotation marks omitted).

¶17    In *Harding v. Garcia*, 2007 MT 120, ¶ 16, 337 Mont. 274, 159 P.3d 1083, we held that the judgment was not final until the district court issued its post-judgment order setting the amount of attorney fees. Following *Harding*, we revised the Rules of Appellate Procedure, effective October 1, 2007, to provide that "[a] final judgment conclusively determines the rights of the parties and settles all claims in controversy . . . including any necessary determination of the amount of costs and attorney fees . . . ." M. R. App. P. 4(1)(a). Thus, the July 2009 judgment was not a final judgment, and did not trigger the Rule 59 time deadlines.

¶18    **2. Did the District Court abuse its discretion by awarding attorney fees to BRPA under the private attorney general doctrine?**

¶19    BRPA argues we should affirm on the ground that Landowners and Marnell have failed to challenge an alternate basis for the District Court's award of fees under the UDJA. While the court did make a brief reference to the UDJA, the conclusion stated

that "[b]ased on the foregoing, the court hereby **GRANTS** BRPA's Petition for Attorneys' Fees under the private attorney general doctrine . . . ." The order is unclear whether the UDJA served as an alternate basis for the court's award, and we decline to affirm solely on that basis.

¶20 We follow the American Rule, "which provides that 'a party in a civil action is generally not entitled to [attorney] fees absent a specific contractual or statutory provision.'" *Montrust*, ¶ 62 (quoting *Matter of Dearborn Drainage Area* (*Bean Lake II*), 240 Mont. 39, 42, 782 P.2d 898, 899 (1989)). In *Montrust*, we adopted the private attorney general doctrine as an equitable exception to this rule. *See Montrust*, ¶¶ 64-67. We adopted factors to be considered in making such an award: "'(1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, (3) the number of people standing to benefit from the decision.'" *Montrust*, ¶ 66 (quoting *Serrano v. Priest*, 569 P.2d 1303, 1314 (Cal. 1977)). In *Finke v. State ex rel. McGrath*, 2003 MT 48, 314 Mont. 314, 65 P.3d 576, we also considered whether an award of fees would be unjust under the circumstances. *See Finke*, ¶ 33. Landowners and Marnell contest the District Court's award of fees under each factor.

¶21 Landowners and Marnell focus on the precise basis of our decision in *BRPA II* as "primarily one of statutory interpretation," *BRPA II*, ¶ 52, in arguing that the decision did not vindicate constitutional interests and therefore does not satisfy the first factor, which evaluates the strength or societal importance of the public policy vindicated by the

litigation. *Montrust*, ¶ 66. BRPA responds that the case fits within the parameters of this factor because our case law does not expressly require that litigation involve a constitutional challenge to justify an award of private attorney general fees, and important constitutional interests were implicated in *BRPA II*.

¶22 We declined to award fees under the private attorney general doctrine in *American Cancer Society v. State*, 2004 MT 376, ¶¶ 7, 20-21, 325 Mont. 70, 103 P.3d 1085, which involved a constitutional challenge to a legislative enactment exempting businesses with state licenses for video gambling machines from local government smoking ordinances more stringent than the Montana Clean Indoor Air Act. We concluded that the statute did not preempt local government smoking ordinances. *American Cancer Society*, ¶ 18. Taking up petitioners' request for fees under the private attorney general doctrine, we explained that, due to concerns that the first factor could thrust courts into a role of evaluating public policies, we had determined to "award[] private attorney general fees only in litigation vindicating constitutional interests." *American Cancer Society*, ¶ 21 (citing *Montrust*, ¶ 66). Because our holding was a declaration that the statute was "ineffectual rather than unconstitutional," we concluded that a constitutional interest had not been vindicated and fees were not warranted. *American Cancer Society*, ¶ 21. Similarly, in *Baxter*, we reversed the district court's award of fees to the plaintiffs after affirming the court's decision on statutory grounds, and vacating the court's constitutional ruling. *Baxter*, ¶¶ 46-47, 51. Citing *American Cancer Society*, we held that, because "[o]ur holding today is statute-based. . . . an award of fees under the private

11

attorney general doctrine is not warranted." *Baxter*, ¶ 47. These cases reflect the caution we have previously noted from *Serrano*, that the first factor not become for courts "assessments of the relative strength or weakness of public policies furthered by their decisions . . . a role closely approaching that of the legislative function." *Serrano*, 569 P.2d at 1314; *see also Montrust*, ¶ 66.

¶23 The statutes at issue in *BRPA II* directly implemented constitutional provisions. We explained that "[t]he 310 Law is one of 'a comprehensive set of laws' enacted by the Legislature to 'accomplish the goals of the constitution,' including Article IX, section 1, which requires legislative provision of remedies to prevent 'depletion and degradation of natural resources.'" *BRPA II*, ¶ 28 (quoting Preamble, Ch. 361, L. 2003); *see also BRPA II*, ¶ 40 ("the 310 Law's originally stated purpose [was] to protect streams in their 'natural or existing' state in order to implement the constitutional directive to prevent the 'depletion and degradation of natural resources'"). Our interpretation of the statute was expressly premised upon its constitutional purpose:

> The 310 Law is intended to "protect the use of water for any useful or beneficial purpose as guaranteed by The Constitution of the State of Montana." Section 75-7-102(2), MCA. Further, the Law's purpose is to fulfill the constitutional directive to "prevent unreasonable depletion and degradation of natural resources." Section 75-7-102(1), MCA; Mont. Const. art. IX, § 1(3). To allow the volume of water flowing in the Mitchell which is not consumed by appropriative uses to simply cede from the jurisdiction of the Law designed to protect the state's waters would be to fail "to protect the use of water for any useful or beneficial purpose," and would be an "unreasonable depletion" of a state resource.

*BRPA II*, ¶ 45.

12

¶24 Regarding the SAL, we noted its origins in Article IX, Section 3(3) of the Montana Constitution, which provides that "[a]ll surface, underground, flood, and atmospheric waters within the boundaries of the state are the property of the state for the use of its people . . . ." *BRPA II*, ¶ 51. We explained that the SAL was enacted following our decisions in *Montana Coalition for Stream Access, Inc. v. Curran*, 210 Mont. 38, 682 P.2d 163 (1984), and *Montana Coalition for Stream Access, Inc. v. Hildreth*, 211 Mont. 29, 684 P.2d 1088 (1984), which established that "[u]nder the Montana Constitution, the State owns the waters for the benefit of its people, and the public has the right to use these waters." *BRPA I*, ¶ 20 (citing *Curran*, 210 Mont. at 53, 682 P.2d at 171; *Hildreth*, 211 Mont. at 35-36, 684 P.2d at 1091); *BRPA II*, ¶ 51. The extensive constitutionally-based arguments offered by the parties led us to comment as follows:

> The arguments of the parties and amici regarding the application of the SAL do not venture far from the underlying constitutional rights which protect their respective interests. BRPA, FWP and Amici Sportsmen's Groups focus on the declaration within Article IX, Section 3, that all waters within Montana are owned by the state for the use of its people. Landowners and Amici Stockgrowers emphasize that same provision's preservation of appropriative rights and cite the property right protections within Article II, Section 3, and Article IX, Section 7. Each party beckons us to view the case and decide it while looking through different constitutional lenses.

*BRPA II*, ¶ 50.

¶25 Landowners and Marnell correctly note that we stated the SAL issue was "primarily one of statutory interpretation." *BRPA II*, ¶ 52. However, our analysis also recognized and was affected by "the constitutional tension which permeates this issue," which prompted us to define our task as "do[ing] our utmost . . . to act with respect for all

13

of the constitutional rights of the parties, and with respect for this Court's previous efforts to balance the constitutional rights at issue." *BRPA II*, ¶¶ 50, 52. These constitutional concerns were integrated into the rationale underlying the decision.

¶26 We conclude that the extent of the implication of constitutional issues within *BRPA II* distinguish it from *American Cancer Society* and *Baxter*, and satisfy the requirement that constitutional interests be vindicated to demonstrate the societal importance of the litigation. *Montrust*, ¶ 66.

¶27 The second factor of the private attorney general doctrine is the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff. *Montrust*, ¶ 66. Landowners and Marnell focus on FWP's participation in the matter and rely on our statement in *Bean Lake II* that the private attorney general doctrine "is normally utilized when the government, for some reason, fails to properly enforce interests which are significant to its citizens." *Bean Lake II*, 240 Mont. at 43, 782 P.2d at 900. They argue that FWP's participation in the matter defeats the appropriateness of an award of fees under the second factor. Marnell adds that FWP's involvement was as an "equal partner" with BRPA, arguing on the basis of cost submissions that FWP "financed" the litigation in *BRPA II*, and notes the participation of the BCD, another governmental entity, in the action. However, Appellants have taken the short view of this extensive litigation.

¶28 In 1999, the BCD received a letter from Jack Pfau of the Etna Ditch Company, an eventual intervening party, requesting the BCD to determine whether 310 permits were

required for work done to the bed and banks of the Mitchell Slough. The BCD requested FWP, the State Department of Natural Resources and Conservation, and the State Department of Environmental Quality to undertake consideration of the requisite issue—whether the Mitchell was a "natural perennial-flowing stream" for purposes of the 310 Law—but none of the agencies would do so. Thus, the BCD initiated a process in late 2000.

¶29 In January 2001, BRPA petitioned the District Court for an alternate writ of prohibition to stop the BCD from determining the 310 Law status of the Mitchell. Upon denial, BRPA sought a writ of prohibition from this Court, which denied the request in *BRPA I*, decided in April 2002. The BCD issued a decision in October 2003 declaring the Mitchell was not a "natural stream" as that term is defined in the 310 Law.[3] FWP participated before the BCD, yet did not appeal from the decision, even though adverse to its interest. However, BRPA appealed the decision to the District Court in December 2003, initially making three claims for relief, as well as requesting reasonable attorney fees: Count I contested the BCD's proceeding as violating BRPA's due process rights; Count II alleged that the BCD's ruling on the 310 Law's applicability was arbitrary and capricious; and Count III alleged violations of the public trust doctrine.[4]

¶30 In January 2004, Marnell and several other landowners along the Mitchell (Walter R. Babcock, et al.), intervened in support of the BCD's decision. These parties also

---

[3] As mentioned above, the attorney fees BRPA sought under the private attorney general doctrine were for the litigation occurring after the issuance of the BCD's decision.

[4] Count III was ultimately dismissed on the motion of BRPA and FWP.

15

prayed that the Mitchell be declared not subject to public use, and filed a third party complaint against the Ravalli County Commissioners alleging violations of the SAL. In response, BRPA amended its complaint by adding Count IV, seeking a declaration that the Mitchell was a natural stream open to public recreational use under the SAL.

¶31 BRPA also sought to join FWP as an involuntary plaintiff in the SAL action. FWP resisted, asking that the request be denied, in part because it had "been consistent by choosing not to litigate whether Mitchell Slough is a stream." The District Court granted BRPA's motion to join FWP as an involuntary plaintiff for purposes of Counts III and IV. Joinder of FWP was denied as to Counts I and II, "because of its failure to appeal the decision of the Conservation District with regard to those counts." Meanwhile, the intervening parties supporting the BCD's decision had grown in number by about twenty-three, as private landowners, Lewis, et al., and three ditch companies intervened. The case then proceeded to decision before the District Court.

¶32 We recognize that FWP's involvement in the case runs contrary to usual considerations under the private attorney general doctrine. On the other hand, FWP's involvement was hardly the usual effort by an agency seeking enforcement of the law. Although it participated before the BCD, FWP did not appeal the decision adverse to its interest, and thereby lost the right to litigate the 310 Law issue before the District Court and this Court—BRPA alone raised and defended that issue. As the District Court noted, but for BRPA's challenge, the BCD's determination that the 310 Law did not apply to the Mitchell may very well still stand. As to the SAL claim, FWP eventually joined the case,

16

but only after BRPA moved for joinder of the agency as an involuntary plaintiff—which FWP *opposed*. Clearly, BRPA's action on the 310 Law and SAL issues was not secondary, nor even equal with FWP. BRPA bore the brunt of the litigation burden, and certainly provided the initiative, and full relief would not have been granted without its effort. The District Court's decision on this factor was clearly not an abuse of discretion.

¶33 The third factor considers the number of people standing to benefit from the decision. *Montrust*, ¶ 66. Landowners and Marnell argue that the litigation's benefit does not justify a fee award. They argue that the holding applies only to the Mitchell, did not revise the 310 Law or SAL law, that any benefit is speculative, and the precedential value is minimal. BRPA responds that the benefits from the action are direct, as the public can now recreate in the Mitchell without fear of trespass charges, the stream is protected from unregulated alteration, and precedential effect is substantial for purposes of protecting other Montana waterways.

¶34 The District Court found the case to be of "statewide importance to all Montanans," noting the reasoning of *BRPA II* that the narrow definition of "natural" as construed by the trial court would "for many Montana waters . . . prohibit the very access it was enacted to provide." *BRPA II*, ¶ 72. The court reasoned that the decision clarified the status of other public waters in the state apart from the Mitchell. The court noted a recent effort in support of a constitutional initiative to amend Article IX of the Montana Constitution to exclude water bodies like the Mitchell from constitutional protection,

17

stating this effort demonstrated the "reach of this case." We conclude there was no abuse of discretion.

¶35 We considered in *Finke* whether an award of fees under the private attorney general doctrine would be unjust under the circumstances. *See Finke*, ¶ 33. Landowners and Marnell argue strongly that equitable considerations in this case weigh against the imposition of attorney fees for many reasons, including their defense of their property rights, reasonable reliance on a limited construction of the applicable definitions in the 310 Law and SAL, and that an award of private attorney general fees against private parties is unfair. BRPA responds that the District Court accepted its equitable arguments for imposing fees upon Landowners and Marnell: that they initially sought the determination from the BCD which implicated the public's rights, first asked for a declaration that the Mitchell was closed to public access, stood to gain a private benefit at the expense of a longstanding public benefit from a favorable decision, and expended substantial resources in an effort to secure those decisions.

¶36 While both sides offer reasonable arguments, there were substantial reasons supporting the court's determination and we conclude there was no abuse of discretion. As we noted in *BRPA II*, prior to litigation on the 310 Law issue, 310 permits had been issued on the Mitchell and there was longstanding public recreational use of the Mitchell. *BRPA II*, ¶¶ 17, 67, 81. The Landowners' and Marnells' actions threatened to eliminate these uses, and litigation was necessary to preserve them.

18

¶37 After review of the applicable factors, we conclude the District Court did not abuse its discretion in awarding fees under the private attorney general doctrine.

¶38 Landowners contest the amount, rate, and overall reasonableness of the fees awarded. They first argue that the District Court erred in awarding BRPA's fees incurred on the SAL issue after January 21, 2005, when FWP became a party to the SAL and public trust issues, and ask that we reverse that portion of the award.

¶39 BRPA originally requested $354,645.65. Exhibits filed with BRPA's petition for fees indicated that these fees were calculated by considering the hours spent by three BRPA attorneys Jack Tuholske, Sarah McMillan, and Matt Clifford on the matter from 2003, when the BCD decision was issued, through 2009. The amounts also included intern/paralegal fees and expenses of BRPA, less costs previously submitted to the court.[5] After hearing, the District Court granted fees in the amount of $319,405.65. The original amount was reduced by Tuholske's stipulated reduction of $1,260 for fees associated with clerical tasks and media activities, and a reduction of $33,980 for time spent on the public trust doctrine claim dismissed prior to trial and the due process claim on which BRPA did not prevail.

¶40 The arguments advanced by Landowners for apportionment of fees on the SAL claim after FWP joined the action are similar to their arguments about the private enforcement factor of the private attorney general doctrine. The District Court cited a treatise which explained that "[i]f private parties are colitigants with the government, an

---

[5] BRPA and FWP requested costs, an issue which the parties mediated separately and is not a subject of this appeal.

19

award of attorney's fees depends on a finding that the private party rendered necessary and significant services of value to the public, which were not duplicative of those advanced by the government." 20 C.J.S. *Costs* § 145 (2007) (citing *Committee to Defend Reproductive Rights v. A Free Pregnancy Center*, 280 Cal. Rptr. 329 (Cal. App. 1st Dist. 1991)). *Committee to Defend* is similar to this case. There, private parties brought an action against a pregnancy center for false advertising and unfair business practices, and four months later the district attorney brought a similar action. *Committee to Defend*, 280 Cal. Rptr. at 330-31. The cases were consolidated, and when the plaintiffs prevailed, the private parties sought fees under California's statute codifying the private attorney general doctrine. *Committee to Defend*, 280 Cal. Rptr. at 331. The district court denied the fees, in part, because "'it was unnecessary for [appellants'] counsel to . . . continue with the litigation after the District Attorney's suit.'" *Committee to Defend*, 280 Cal. Rptr. at 334. The appellate court reversed, holding it was an abuse of the court's discretion to deny fees on the basis that the government subsequently filed a similar suit, and remanded. *See Committee to Defend*, 280 Cal. Rptr. at 337. The court directed the trial court to consider if the "colitigating private party rendered necessary and significant services of value to the public or to a large class of persons benefited by the result of the litigation," considering the "peculiar facts and record of each such case presenting that issue." *See Committee to Defend*, 280 Cal. Rptr. at 335, 337.

¶41 Relying on this authority, the District Court determined that BRPA "contributed in a significant way to the vindication of an important constitutional or statutory right, rendered necessary and significant services of value to the public which were not duplicative of those advanced by FWP and actively participated throughout in the prosecution of the case." It noted the testimony of Robert Lane, chief legal counsel for FWP, that BRPA's involvement was:

> critical to the outcome. It was critical to whether this case would have developed. It was critical to whether the issues would have been developed in this case. And it was critical in terms of our participation in the case. Because, we came into the case so late [] that, without the participation and partnership, basically, of BRPA, we would not have been able to present the case that was necessary.

¶42 Thus, the court concluded that there was "no basis for apportionment as it relates to FWP's involvement. BRPA's initiation of this case and tireless efforts in seeing it through to a successful appeal support a full award of fees." We conclude that the District Court did not abuse its discretion in declining to reduce BRPA's fees related to the SAL claim after FWP was joined on the case because it was clear that BRPA's participation in the case was essential to the vindication of rights in this case.

¶43 Landowners also argue that the hourly rate and the total fees awarded were not reasonable under the *Plath*[6] factors and constitute an abuse of discretion. Landowners contest three of the seven factors, developing an argument only as to factor four, "the amount of money or the value of the property to be affected." *Plath*, ¶ 36. Landowners

---

[6] *Plath v. Schonrock*, 2003 MT 21, 314 Mont. 101, 64 P.3d 984.

21

argue that the claims of the case were not monetary and affected no property owned by BRPA, and that BRPA's pro bono involvement does not support the fees awarded.

¶44 In *Plath*, we noted seven factors to assist in determining a reasonable attorney fee, which "must be ascertained under the facts of each case." *Plath*, ¶ 36. The "guidelines are not exclusive; the trial court may consider other factors as well." *Plath*, ¶ 36. The contested *Plath* factors here are the amount and character of services rendered (factor 1), the character and importance of the litigation in which the services were rendered (factor 3), and the amount of money or the value of the property to be affected (factor 4). *Plath*, ¶ 36. Landowners also challenge the hourly rate approved by the District Court by comparing customary rates in Montana and noting the actual rate that BRPA's counsel billed BRPA.

¶45 The court rejected Landowners' argument that factor four referenced monetary claims affecting property only owned by BRPA as an overly narrow interpretation. The court looked to the value of the property affected and preservation of the public right to access and recreate on the Mitchell. The court concluded that hourly rates of $300 for Tuholske and $200 for McMillan and Clifford were reasonable after considering recent fee awards and the expert testimony about the complexity of the case and appropriate rates provided by BRPA, and reviewing the *Plath* factors. We conclude that the District Court did not abuse its discretion in determining the rate and amount of fees awarded.

¶46 Finally, Landowners raise an important issue regarding the parties against whom the judgment is imposed. A number of landowners intervened during the course of the

22

litigation. The Babcock, et al., intervenors, consisting of approximately four parties, intervened in January 2004 in support of the BCD's decision. Marnell also intervened in the action and, together with the Babcock intervenors, filed the third party complaint against the Ravalli County Commissioners, which requested the declaration that the Mitchell was not subject to public access under the SAL. Later in 2004, a group of approximately twenty landowning parties and three ditch companies, Lewis, et al., intervened in the action, yet were not formally made parties to the third party complaint.

¶47    BRPA's fee petition requested fees from "Intervenors Babcock, et al. and Marnell Corrao Associates, et al." In response to an objection filed by the Babcock and Lewis intervenors, which stated that the intervenors included "not just the four parties identified by BRPA," BRPA responded that "[i]ntervenors of course can apportion any fee award among themselves as they choose . . . ." The District Court's November 2009 order awarded fees pursuant to the "private attorney general doctrine as applied to the Landowners and [Marnell] Corrao Associates . . . ." In a footnote, the court noted that "Landowners apparently believe that the composition of their membership is not relevant to this issue . . . . The Landowners are correct that their composition is not relevant to the issues presented here." The District Court determined the amount of fees in March 2010, after a hearing on reasonableness. In April 2010, both groups of intervening landowners, Babcock, et al., and Lewis, et al., filed notices of appeal, indicating their respective belief that they were adversely affected by the fee award. On May 5, 2010, the District Court filed judgment on attorney fees against "Intervenors/Third Party Plaintiffs as self-

23

identified in their Complaint filed in January 2004: Walter R. Babcock, Kenneth F. Siebel, Jr., Bitterroot Springs Ranch, Tucker Crossing Ranch, Hugh Cregg, Valley Springs Ranch, Marnell Corrao Associates, Inc., in the amount of $319,405.65."[7] However, consistent with their notices of appeal, the briefs before this Court were filed on behalf of both the Babcock, et al., intervenors and the Lewis, et al., intervenors.

¶48 Landowners argue that, under the judgment, "only six of the approximately 30 intervening parties were named as responsible for fees." From a review of the record, we cannot determine the basis for the District Court's division of responsibility for the fee award among the landowner intervenors, particularly given its seemingly contradictory statement that the Landowners' "composition is not relevant to the issues presented here." We thus remand for clarification on this issue.

¶49 In conclusion, the District Court did not lose jurisdiction to rule on BRPA's motion for attorney fees by operation of M. R. Civ. P. 59(g). The District Court did not abuse its discretion by awarding fees under the private attorney general doctrine to BRPA in the amount of $319,405.65, which we affirm. We remand for further proceedings necessary to clarify the parties against whom the fee judgment is imposed.

¶50 Affirmed and remanded.


/S/ JIM RICE

---

[7] The third party complaint identified Bitterroot Springs Ranch and Valley Springs Ranch as assumed business names for Intervenors Kenneth F. Siebel, Jr., and Hugh Cregg, respectively.

We concur:

/S/ MICHAEL E WHEAT
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS