JUSTICE BAKER
delivered the Opinion of the Court.
¶1 The Clark Fork Coalition, Katrin Chandler, Betty Lannen, Polly Rex, and Joseph Miller (collectively, “the Coalition”) challenged the validity of a Department of Natural Resources and Conservation administrative rule concerning groundwater appropriations exempt from permitting requirements. The First Judicial District Court invalidated the rule. We affirmed. Clark Fork Coalition v. Tubbs, 2016 MT 229, 384 Mont. 503, 380 P.3d 771 (hereafter “Clark Fork I”). The Coalition sought fees under the private attorney general doctrine, and the District Court granted its motion. The Department appeals the District Court’s order awarding fees to the Coalition.
¶2 We reverse.
PROCEDURAL AND FACTUAL BACKGROUND
¶3 The Montana Water Use Act (hereafter “the Act”) exempts certain new groundwater appropriations from permitting requirements. Section 85-2-306, MCA. In part, it exempts appropriations outside of stream depletion zones that do not exceed 35 gallons per minute and 10 acre-feet per year, “except that a combined appropriation from the same source by two or more wells or developed springs exceeding 10 acre-feet, regardless of the flow rate, requires a permit.” Section 85-2-306(3)(a)(iii), MCA (emphasis added). The statute does not define the phrase “combined appropriation.”
¶4 The Department promulgated a rule in 1987 that stated, “Groundwater developments need notbe physically connected nor have a common distribution system to be considered a ‘combined appropriation.’ ” Admin. R. M. 36.12.101(7) (1987) (hereafter “1987 Rule”). The Department issued a new rule in 1993 that defined a “combined appropriation” as “an appropriation of water from the same *207 source aquifer by two or more groundwater developments, that are physically manifold into the same system.” Admin. R. M. 36.12.101(13) (1993) (hereafter “1993 Rule”).
¶5 In 2009, the Coalition filed a petition for declaratory ruling with the Department asking it to invalidate the 1993 Rule. A Department hearing examiner considered, but ultimately denied, the Coalition’s petition, concluding that the 1993 Rule did not conflict with the Act. The hearing examiner nonetheless ordered the Department to initiate proposed rulemaking to repeal the 1993 Rule because of increasing demands on water resources in Montana. For reasons not relevant to the issue on appeal, the Department did not repeal and replace the 1993 Rule.
¶6 The Coalition filed a petition for judicial review in the District Court in 2010, challenging the validity of the 1993 Rule and the hearing examiner’s denial of its petition. The District Court invalidated the 1993 Rule, reinstated the 1987 Rule, and required the Department to develop a new rule consistent with its order. The court reasoned that the 1993 Rule’s definition of “combined appropriation” “violates not only the spirit and legislative intent behind the Water Use Act, but... [also] the legislative intent in the enactment of the exempt well statute.”
¶7 The Montana Well Drillers Association, the Montana Association of Realtors, and the Montana Building Industry Association appealed the District Court’s order. The Department did not participate in the appeal. We affirmed the District Court’s invalidation of the 1993 Rule and its reinstatement of the 1987 Rule, but reversed its order directing the Department to initiate new rulemaking. Clark Fork I, ¶ 46. We held that the Rule was inconsistent with the statute and was therefore invalid. Clark Fork I, ¶ 28.
¶8 Prior to our decision in Clark Fork I, the Coalition had moved for fees under the private attorney general doctrine, and the District Court had granted that motion. The court rejected the Department’s argument that it was protected from liability by quasi-judicial immunity, because it held that the issue in the litigation—the Department’s promulgation of the 1993 Rule—was not a quasi-judicial function. The court concluded that the private attorney general doctrine applied, reasoning that the litigation between the parties directly implicated constitutional interests. The court explained that
the constitution mandates that the legislature keep track of water rights. The legislature passed the Water Use Act to breath[e] life into that mandate. However, [the Departmentl’s rule conflicted with the statute which codifies the protections guaranteed in the *208 constitution. While decided on statutory grounds, this Court’s Order [on the Coalition’s petition for judicial review] is explicit in integrating the constitutional rationale underlying the decision.
The court concluded that the Coalition “qualifies for attorney fees under the private attorney general doctrine because it bore a significant and necessary burden to vindicate all Montanans’ constitutional water rights in a suit against the party which created the invalid rule.” The parties then stipulated to attorney fees in the amount of $100,000, but agreed that the Department would not pay the fees or appeal the District Court’s order on fees until this Court resolved the appeal in Clark Fork I.
STANDARDS OF REVIEW
¶9 We review for abuse of discretion a district court’s ruling granting or denying attorney fees under the private attorney general doctrine. Gateway Vill., LLC v. Mont. Dep’t of Envtl. Quality, 2015 MT 285, ¶ 15, 381 Mont. 206, 357 P.3d 917; W. Tradition P’ship v. Att’y Gen. of Mont., 2012 MT 271, ¶ 7, 367 Mont. 112, 291 P.3d 545; Baxter v. State, 2009 MT 449, ¶ 46, 354 Mont. 234, 224 P.3d 1211. A district court’s determination whether legal authority exists for an award of attorney fees is a conclusion of law, which we review for correctness. Mlekush v. Farmers Ins. Exch., 2015 MT 302, ¶ 8, 381 Mont. 292, 358 P.3d 913.
DISCUSSION
¶10 Whether the Coalition was entitled to recover attorney fees following its successful challenge to the Department’s 1993 Rule.
¶11 The Department argues that the District Court abused its discretion in granting the Coalition’s motion for attorney fees under the private attorney general doctrine. It contends that the private attorney general doctrine does not apply, in part because the Coalition did not vindicate important constitutional interests. The Department contends also that the quasi-judicial immunity doctrine protects it from liability for attorney fees because the Coalition’s challenge was based on the hearing examiner’s discretionary decision to deny the Coalition’s petition—a quasi-judicial act.
¶12 The Coalition argues that the District Court rightly determined that the private attorney general doctrine applied to its successful challenge of the Department’s rule. The Coalition asserts that its litigation vindicated constitutional interests articulated in Article IX, Section 3, of the Montana Constitution, which provides for the protection of existing water rights and water resources and requires *209 the Legislature to regulate and administer water rights in the state. The Coalition argues further that the quasi-judicial immunity doctrine does not shield the Department from liability because the litigation concerned the Department’s promulgation of the 1993 Rule—an administrative act—and not the quasi-judicial act of the hearing examiner’s decision.
¶13 An administrative agency may promulgate rules only within the bounds set by the Legislature. See Clark Fork I, ¶ 25 (stating that “Irlule.s adopted by administrative agencies which conflict with statutory requirements or exceed authority provided by statute[ ] are invalid” (citation and internal quotations omitted)). Agency rules must be “consistent and not in conflict with the statute” and must be “reasonably necessary to effectuate the purpose of the statute.” Clark Fork I, ¶ 25 (quoting § 2-4-305(6), MCA). We determined in Clark Fork I that the Department’s 1993 Rule conflicted with the Act and was thus invalid. Clark Fork I, ¶ 28. The District Court agreed with the Coalition that its success in the litigation justified an award of attorney fees.
¶14 Montana follows the American Rule, under which “ ‘a party in a civil action is generally not entitled to [attorney] fees absent a specific contractual or statutory provision.’ ” Bitterroot River Protective Ass’n v. Bitterroot Conservation Dist., 2011 MT 51, ¶ 20, 359 Mont. 393, 251 P.3d 131 (hereafter “BRPA IIP) (quoting Montanans for the Responsible Use of the Sch. Trust v. State ex rel. Bd. of Land Comm’rs, 1999 MT 263, ¶ 62, 296 Mont. 402, 989 P.2d 800 (hereafter “Montrust”)). There are limited “equitable exceptions” to this rule. W. Tradition P’ship, ¶ 13; Montrust, ¶ 64. Among them is the private attorney general doctrine. W. Tradition P’ship, ¶ 13; BRPA III, ¶ 20. “That doctrine applies when the government, for some reason, fails to properly enforce interests which are significant to its citizens.” Gateway Vill., LLC, ¶ 12 (citation and internal quotations omitted).
¶15 When determining whether to award fees under the private attorney general doctrine, we consider: “(1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, [and] (3) the number of people standing to benefit from the decision.” Montrust, ¶ 66; accord BRPA III, ¶ 20; W. Tradition P’ship, ¶ 14. “We also consider whether an award of fees would be unjust under the circumstances.” W. Tradition P’ship, ¶ 14 (citing Finke v. State ex rel. McGrath, 2003 MT 48, ¶ 33, 314 Mont. 314, 65 P.3d 576); accord BRPA III, ¶ 20. We have held that fees under the *210 private attorney general doctrine may be awarded “only in litigation vindicating constitutional interests.” Am. Cancer Soc’y v. State, 2004 MT 376, ¶ 21, 325 Mont. 70, 103 P.3d 1085 (citing Montrust, ¶ 66). We have invoked the private attorney general doctrine sparingly. W. Tradition P’ship, ¶ 13.
¶16 Decisions awarding fees under the private attorney general doctrine illustrate its narrow application. In Montrust, we addressed the validity of several statutory provisions concerning the administration and disposition of school trust lands that the federal government granted to the state. Montrust, ¶¶ 1-9. We noted that the Montana Constitution required the State to act as trustee of the lands. Montrust, ¶¶ 13-14. The Constitution provided guidelines for the State’s disposition of these lands and required, among other things, that the State obtain “the full market value” of any of the lands of which it chose to dispose. Montrust, ¶¶ 16-17. We held that a number of the challenged statutory provisions permitted the State to violate its fiduciary duties as trustee of the lands and to dispose of the lands for less than their full market value, in violation of the Constitution. Montrust, ¶¶ 22, 23, 32, 42, 51, 58. We concluded that Montrust had “litigated important public policies that are grounded in Montana’s Constitution,” that the State had not disputed the necessity of private enforcement or Montrust’s resultant burden, and that Montrust’s litigation had benefitted “a large class: all Montana citizens interested in Montana’s public schools.” Montrust, ¶ 67. We therefore held that Montrust was entitled to fees under the private attorney general doctrine. Montrust, ¶ 69.
¶17 In BRPA III, we affirmed the District Court’s award of private attorney general fees. We based our holding on the constitutional underpinnings of our decision in the underlying litigation, Bitterroot River Protective Ass’n v. Bitterroot Conservation District, 2008 MT 377, 346 Mont. 507, 198 P.3d 219 (hereafter “BRPA IF). In BRPA II, the plaintiff and appellant had challenged the validity of two statutes: the Natural Streambed and Land Preservation Act of 1975 (the “310 Law”) and the Stream Access Law. BRPA II, ¶¶ 1-4. We noted in that case that the 310 Law was “one of a comprehensive set of laws enacted by the Legislature to accomplish the goals of the constitution, including Article IX, section 1, which requires legislative provision of remedies to prevent depletion and degradation of natural resources.” BRPA II, ¶ 28 (citation and internal quotations omitted). We noted also that the Stream Access Law had its origins in Article IX, Section 3(3) of the Montana Constitution, which provides that waters within the state *211 “are the property of the state for the use of its people and are subject to appropriation for beneficial uses as provided by law.” BRPA II, ¶ 51 (citation and internal quotations omitted).
¶18 We noted in BRPA III that our interpretation of the 310 Law in the prior case “was expressly premised upon its constitutional purpose.” BRPA III, ¶ 23 (citing BRPA II, ¶ 45). We explained that both parties in the litigation in BRPA II had proffered “extensive constitutionally-based arguments” regarding the application of the Stream Access Law. BRPA III, ¶ 24 (citing BRPA II, ¶ 50). We held therefore that “constitutional concerns were integrated into the rationale underlying the decision” in BRPA II and that the two statutes at issue “directly implemented constitutional provisions.” BRPA III, ¶¶ 23, 25. This satisfied “the requirement [under the private attorney general doctrine] that constitutional interests be vindicated to demonstrate the societal importance of the litigation.” BRPA III, ¶ 26 (citing Montrust, ¶ 66).
¶19 In contrast, we have denied private attorney general fees when the litigation, though successful, did not vindicate a constitutional interest. In Baxter, we addressed whether physicians who aided patients in dying were protected from prosecution for homicide. Baxter, ¶ 3. We explicitly declined to address the physicians’ constitutional arguments. Baxter, ¶ 10. Instead, we concluded that Montana statutes protect physicians from prosecution so long as they obtain the patients’ consent. Baxter, ¶ 50. We held that “[o]ur holding today is statute-based. Therefore, without the vindication of constitutional interests, an award of fees under the private attorney general doctrine is not warranted.” Baxter, ¶ 47.
¶20 Likewise, in American Cancer Society, we concluded that the successful party in the litigation was not entitled to private attorney general fees. The petitioners in that case challenged the constitutionality of a recently-enacted law exempting certain establishments from local government smoking ordinances. Am. Cancer Soc’y, ¶ 7. The petitioners argued in part that the statute “unconstitutionally deprives local governments and the people of the right of self-government in violation of Article XI, Section 6, of the Constitution of Montana.” Am. Cancer Soc’y, ¶ 3. We held that the challenged statute “does not set forth a prohibition of self-governing powers,” that it “does not preempt any no-smoking ordinances adopted by any self-governing entity,” and that it thus “has no force and effect.” Am. Cancer Soc’y, ¶ 18. We concluded that our holding “amounts to a declaration that [the statute] is ineffectual rather than *212 unconstitutional; therefore, without the vindication of a constitutional interest, this case does not warrant private attorney general fees.” Am. Cancer Soc’y, ¶ 21.
¶21 In Clark Fork I, we addressed whether the Department’s 1993 exempt well rule was consistent with the authorizing statute. Clark Fork I, ¶ 28. We conducted a statutory analysis of § 85-2-306(3)(a)(iii), MCA, and concluded, “based upon the plain language of the statute and the stated purpose of the Act,” that “ ‘combined appropriation’ refers to the total amount or maximum quantity of water that may be appropriated without a permit and not to the manner in which wells or developed springs may be physically connected.” Clark Fork I, ¶ 24 (emphasis added). We held that the 1993 Rule’s definition of “combined appropriation” was “inconsistent with the plain language of § 85-2-306(3)(a)(iii), MCA,” and with the “stated statutory purpose of the Act” because “it engrafted an additional requirement on the exempt well statute that wells or developed springs be ‘physically manifold into the same system.’ ” Clark Fork I, ¶ 28. We determined also that “[t]he term ‘combined appropriation’ utilized in the original 1987 statute has remained intact and unchanged in the subsequent statutory amendments of 1991 and 2013.” Clark Fork I, ¶ 33. We thus held, “The 1993 Rule is invalid because it conflicts with the plain language of § 85-2-306, MCA, and because the Legislature, as is its prerogative, has not abrogated the original meaning it placed on ‘combined appropriation’ since the IL legislature first incorporated the term in 1987.” Clark Fork I, ¶ 35.
¶22 This case differs in a material respect from BRPA III, where “constitutional concerns were integrated into the rationale underlying the decision.” BRPA III, ¶ 25. The issue addressed in Clark Fork I was purely an issue of statutory interpretation—whether the Department’s 1993 Rule conflicted with § 85-2-306(3)(a)(iii), MCA. Clark Fork I, ¶ 35. The case did not address whether the 1993 Rule implicated or conflicted with any constitutional provisions. There were no constitutional concerns “integrated into the rationale,” BRPA III, ¶ 25, and the Coalition did not litigate “important public policies... grounded in Montana’s Constitution,” Montrust, ¶ 67. Although the Act itself implements the mandates of Article IX, Section 3, of the Montana Constitution, the Department’s rule is a step removed. The litigation did not “directly implement) ] constitutional provisions,” but centered only on construction of the Act. BRPA III, ¶ 23. Under the Coalition’s argument, because water rights are an important constitutional interest, virtually any case challenging the Department’s *213 administration of the Act could subject the agency to a potential fee award.
¶23 Because the decision in the underlying case was “statute-based,” Baxter, ¶ 47, the Coalition is not entitled to fees under the private attorney general doctrine, Am. Cancer Soc’y, ¶ 21; W. Tradition P’ship, ¶ 14. We do not address whether the Coalition satisfied the remaining factors of this doctrine, because its failure to show that the litigation vindicated constitutional interests is dispositive. See Am. Cancer Soc’y, ¶ 21; Baxter, ¶ 47. The District Court abused its discretion in concluding that the Coalition could recover fees under the private attorney general doctrine. Because we reverse on this ground alone, we need not address the Department’s argument on quasi-judicial immunity. See Sikorski v. Johnson, 2006 MT 228, ¶ 26, 333 Mont. 434, 143 P.3d 161 (holding that the State was not liable because it had no duty, and concluding that it was therefore unnecessary to reach the State’s quasi-judicial immunity argument).
CONCLUSION
¶24 The District Court’s order granting the Coalition’s motion for attorney fees is reversed.
CHIEF JUSTICE McGRATH, JUSTICES SHEA and SANDEFUR concur.