No. 85-274

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

D & F SANITATION SERVICE, BIG SKY
HAUL AWAY and YELLOWSTONE SANITATION
SERVICE,

        Plaintiffs and Appellants,

  -vs-

CITY OF BILLINGS,

        Defendant and Respondent.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Alexander & Baucus; Gary M. Zadick argued, Great
Falls, Montana

    For Respondent:

        Peterson, Schofield & Leckie; Kenneth Peterson argued,
Billings, Montana

---

        Submitted: October 25, 1985

        Decided: January 16, 1986

Filed: JAN 16 1986

_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Plaintiff garbage haulers brought this action for damages and injunctive relief against defendant City of Billings in the District Court of the Thirteenth Judicial District, Yellowstone County. The District Court denied the injunction. The parties stipulated to the facts and submitted the issues to the District Court. The District Court ruled for the City. Both parties stipulated to entry of judgment in the City's favor. The District Court dismissed the complaint with prejudice in accordance with the stipulation. Plaintiffs appeal and defendant cross-appeals from the judgment. We affirm.

There are two issues on cross-appeal and three issues on appeal. We begin with the two issues on cross-appeal since they are logically prior. Is section 7-2-4736, MCA, constitutional? And how should it be interpreted? There are three issues raised by appellants on appeal. What is the plain meaning of section 7-2-4736, MCA? Did the District Court erroneously assume the residents who receive service from private garbage haulers had to pay twice for garbage service? Has the legislature by enacting section 7-2-4736, MCA pre-empted the field of garbage regulation?

The parties stipulated to the facts in this case. Plaintiffs are Montana corporations authorized by the Public Service Commission to collect garbage in and outside the Billings city limits. They brought this action for damages and an injunction against the City of Billings for violating section 7-2-4736, MCA. Section 7-2-4736, MCA, states:

> PRESERVATION OF EXISTING GARBAGE OR SOLID WASTE SERVICE IN THE EVENT OF ANNEXATION. A municipality

that annexes or incorporates additional area receiving garbage and solid waste disposal service by a motor carrier authorized by the public service commission to conduct such service may not provide competitive or similar garbage and solid waste disposal service to the area for 5 years following annexation except upon a proper showing to the public service commission that the existing carrier is unable or refuses to provide adequate service to the annexed or incorporated area, and after the expiration of 5 years, the municipality may provide such service only if a majority of the residents of the annexed or incorporated area request in writing to the municipality that such service be provided by the municipality. If a proper showing is made that the existing carrier is unable or refuses to provide adequate service to the annexed or incorporated area or if a majority of the residents request service from the municipality, the municipality may assume sole jurisdiction for the garbage and solid waste disposal service to the entire annexed or incorporated area.

The City of Billings has provided garbage service to annexed areas on the following basis:

a) when totally undeveloped, vacant lands are annexed, the City provides all subsequent garbage services;

b) when developed lands are annexed that are receiving no garbage services, the City provides all subsequent garbage services;

c) when developed lands are annexed on which some persons are receiving private garbage services, those persons cannot receive City garbage service for 5 years, but the City provides garbage collection services to all subsequent residents in the area.

The garbage collected by the plaintiffs, is taken to the city landfill. City customers of the plaintiffs are assessed a disposal fee by the City. County customers are assessed a fee by the county, which is remitted to the City.

The first issue raised on cross-appeal is the constitutionality of section 7-2-4736, MCA. Respondent contends section 7-2-4736, MCA is unconstitutional because it violates 1972 Mont. Const., Art. II, § 31, which prohibits laws making irrevocable grants of franchises; the equal protection clause of 1972 Mont. Const., Art. II, § 4; and

- 3 -

1972 Mont. Const., Art. V, § 12 which prohibits the legislature from passing special or local laws.

We begin with respondent's first contention that section 7-2-4736, MCA violates 1972 Mont. Const., Art. II, § 31. That section states: "No ex post facto law nor any law impairing the obligation of contracts, or making any irrevocable grant of special privileges, franchises, or immunities, shall be passed by the legislature." Respondent contends a franchise is granted where a special privilege is conferred by government upon an individual or association which does not belong to citizens generally. Respondent contends that a grant of an exclusive right for a definite period of time falls within the commonly established definition of a franchise, and that section 7-2-4736, MCA grants a franchise and special privilege to the appellants to collect garbage within a portion of the City.

Appellants contend the statute does not grant an irrevocable privilege or franchise but that the privilege created in the appellants can be terminated.

We defined a franchise as a "special privilege conferred by the government on an individual which does not belong to the citizens generally." Glodt v. City of Missoula (1948), 121 Mont. 178, 183, 190 P.2d 545, 548. Section 7-2-4736, MCA confers a special privilege or franchise upon the private garbage haulers. However, we agree with the District Court that the franchise granted is not irrevocable. The privilege can be terminated by either a showing that the private carrier is unable or refused to provide adequate service; or by written request of a majority of residents after a set period of time. Thus even if section 7-2-4736, MCA does grant a franchise, it is not an irrevocable one within the

- 4 -

meaning of 1972 Mont. Const., Art. II, § 31. We hold section 7-2-4736 is constitutional under 1972 Mont. Const., Art. II, § 31.

Respondent next contends section 7-2-4736, MCA violates the equal protection clause of the Montana Constitution which states: "No person shall be denied the equal protection of the laws." 1972 Mont. Const., Art. II, § 4. Respondent makes an allegation that the law places a greater tax on annexed taxpayers as opposed to unannexed taxpayers." A privilege conferred upon one class is a discrimination in favor of that class and against all others." Hill v. Rae (1916), 52 Mont. 378, 382, 158 P. 826, 828. But the mere fact it is discriminatory is not necessarily unlawful. The greater part of all legislation is discriminatory in some manner. Id. An analysis of whether a privilege violates equal protection requires a determination as to whether the classification is legally permissible and if the classification is reasonable. Id.

This statute is not subject to strict scrutiny because it does not burden a fundamental right or constitute invidious discrimination against a suspect classification. The test here is whether the classification is rationally related to a legitimate governmental interest. Tipco Corp., Inc. v. City of Billings (1982), 197 Mont. 339, 345, 642 P.2d 1074, 1078.

The legislature sought to protect the investments of motor carriers in enacting section 7-2-4736, MCA. Generally, prior to annexation, land areas are sparsely populated. They do not represent the most attractive business to private carriers. Yet the need for garbage disposal services is not met by the City. Therefore the legislature sought to make

unannexed areas a more attractive business proposal by allowing the private carriers time to recoup their investments after annexation. This is a legitimate governmental objective. The classification of people in annexed areas using private garbage services prior to annexation bears a rational relation to the governmental purpose of encouraging private garbage service in unannexed areas. We hold this statute does not violate equal protection.

Finally, respondent contends section 7-2-4736, MCA violates 1972 Mont. Const., Art. V, § 12 which states: "The legislature shall not pass a special or local act when a general act is, or can be made, applicable." A general law need not be a law which operates on all persons. "The word 'general' comes from the Latin 'genus' and relates to the whole kind, class or order; hence a law which affects a class of persons less than all may be a general law." Leuthold v. Brandjord (1935), 100 Mont. 96, 105, 47 P.2d 41, 45. Special laws are laws made for individual cases, or for less than a class; local laws are special as to place. Such laws are prohibited in order to prevent a diversity of laws on the same subject. Id. The test for a special law is: "Does it operate equally upon all of a group of objects which, having regard to the purpose of the legislature, are distinguished by characteristics sufficiently marked and important to make them a class by themselves?" State ex rel. Redman v. Meyers (1922), 65 Mont. 124, 128, 210 P. 1064, 1066. We have already determined the legislative purpose to encourage private garbage service to unannexed areas is a sufficiently important governmental interest to justify the classification. Section 7-2-4736, MCA is not a special or

local law. This statute is a general law which does not violate 1972 Mont. Const., Art. V, § 12. We find section 7-2-4736, MCA to be constitutional.

The next issue raised on cross-appeal and on appeal is the interpretation of section 7-2-4736, MCA. Appellants contend the plain meaning of section 7-2-4736, MCA is to prohibit all competitive garbage service by a city in an annexed area for a period of five years after annexation. They argue the statute refers to "annexed area" but does not differentiate between old and new customers as the City does. Therefore they argue all new residents of an annexed area must use private garbage services for a period of five years after annexation.

Respondent contends the language of the statute and the intent of the legislature is to preserve existing garbage services, but not to force subsequent residents in annexed areas to use private garbage services. Therefore, the City has been providing garbage services to subsequent residents in annexed areas. Respondent also contends that where a statute grants a franchise to a corporation the words of grant must be construed against the grantee.

We hold the District Court was correct in interpreting the statute to mean that the private garbage carriers may continue to provide services to those customers it had prior to annexation only. We hold the City is correct in its interpretation for three reasons. First, the purpose of the statute is to allow the private garbage haulers to recoup their investment for providing an essential service. The investment in providing services prior to annexation is only as great as the need for services at that time and therefore section 7-2-4736, MCA should be limited to existing customers

- 7 -

at the time of annexation. Second, section 7-2-4736, MCA grants a franchise to the private garbage haulers. In the grant of a franchise by the government the grantee takes only what is clearly given by the grant, and nothing by implication. Sheridan County Elec. Co-op v. Montana-Dakota Utilities Co. (1954), 128 Mont. 84, 87, 270 P.2d 742, 743. Thus the statute must be interpreted to refer only to customers existing at the time of annexation. Third, if a governmental grant of a franchise is susceptible to two meanings, the meaning which works the least harm to the public must be adopted. City of Helena v. Helena Light and Ry. Co. (1922), 63 Mont. 108, 115, 207 P. 337, 339. The interpretation restricting the scope of the statute to existing services works the least harm to the public and must be adopted.

The second issue on appeal is whether the District Court erred in assuming the residents who receive private garbage service had to pay twice for garbage services? As part of its "least harm to the public" analysis, the District Court found that if the statute were limited to existing residents at the time of annexation, only they would have to pay twice (once as a taxpayer, and once to the private carrier).

The stipulation of fact entered by the parties states,

"That the waste collected by the Plaintiffs is taken to the City operated landfill where it is disposed of by the City. City customers of the Plaintiff's are assessed a disposal fee by the City. County area customers of the Plaintiffs pay a solid waste fee which is assessed by the County and then the County remits to the City. Roll-off boxes containing construction or demolition material taken by the Plaintiffs to the City landfill are assessed a fee based upon cubic yardage and the fee is collected from the carrier."

From this stipulation of fact it is unclear whether or not the City taxpayers pay twice for garbage service. Thus it is

impossible for us to determine if the District Court was in error, but even if in error, it was harmless. An error in the court's findings of fact will not lead to reversal unless a correction of the error might lead to a different judgment. Grogan v. Valley Trading Co. (1904), 30 Mont. 229, 237, 76 P. 211, 214. In this case, the finding of fact of the District Court is harmless error. Stanford v. Coram (1902), 26 Mont. 285, 67 P. 1005.

The third issue on appeal is whether the legislature by enacting section 7-2-4736, MCA has pre-empted the field of garbage regulation. The appellants contend the legislature has evidenced its intent to pre-empt municipalities from collecting garbage by authorizing the PSC to grant certificates of operating authority to garbage carriers. Appellant argues municipalities have only such power as is granted by the legislature, and if the legislature chooses to pre-empt a field, the city is powerless to act. Appellants contend that local regulation was not intended by the legislature since no statutory authority exists for the regulation of garbage as Billings does.

Prior to the 1972 Montana Constitution, it was fundamental that cities were subordinate political subdivisions of the State. State ex rel. Great Falls Housing Authority v. Great Falls (1940), 110 Mont. 318, 100 P.2d 915. Cities had only those powers expressly given to them by the legislature. State ex rel. City of Libby v. Haswell (1966), 147 Mont. 492, 494-95, 414 P.2d 652, 653; City of Bozeman v. Ramsey (1961), 139 Mont. 148, 156, 362 P.2d 206, 210; City of Billings v. Herold (1956), 130 Mont. 138, 140-41, 296 P.2d 263, 264; State ex rel. Wiley v. District Court (1945), 118 Mont. 50, 54, 164 P.2d 358, 360. Thus if the state

legislature deemed a subject to be a matter of statewide concern, it could enact laws on the subject and pre-empt local governments from the field. Haswell, 147 Mont. at 496, 414 P.2d at 654; Ramsey, 139 Mont. at 163, 362 P.2d at 214; Herold, 130 Mont. at 141, 296 P.2d at 269-70; Wiley, 118 Mont. at 54, 164 P.2d at 361.

However, the 1972 Montana Constitution changed the role and power of local governments in Montana. The new Constitution provides local governments with the option of adopting a self-government charter or retaining general government powers. If a local government adopts a charter, the local government may exercise any power not prohibited by the Constitution, law or the charter. 1972 Mont. Const., Art. XI, § 6. This section grants local governments, which formerly had only such powers granted to them, the authority to share powers with the state government. "[T]he 'shared powers' concept does not leave the local unit free from state control; it does, however, change the basic assumption concerning the power of local government. At present, that [sic] assumption is that local government lacks power unless it has been specifically granted. Under the shared powers concept, the assumption is that local government possesses the power, unless it has been specifically denied." 1972 Mont. Const., Con. Committee Notes (1972), Vol. II, pp. 796-97. (Emphasis in original.) Hence, if a local government did adopt self-government powers under the 1972 Constitution, then Haswell, Ramsey, Herold, and Wiley would no longer apply. If a local government choose to retain general government powers, the local government would have only the powers given to it by the legislature and those cases would still be applicable.

We take judicial notice under Rule 202(b)(2), M.R.Evid., that Billings voters adopted a self-government charter on November 14, 1976. With the adoption of the charter, the City of Billings assumed self-government powers. The City may exercise any power or provide any service except those specifically prohibited by the constitution, law, or the charter. Section 7-1-102, MCA. Because of this we expressly overrule statements in City of Billings v. Weatherwax (Mont. 1981), 630 P.2d 1216, 38 St.Rep. 1034, that municipalities have only such power as is granted them by the legislature. This was the law under the 1889 Constitution. It is not the law under the 1972 Constitution. Under the new Constitution, the City of Billings has all powers save those expressly prohibited.

The only way the doctrine of pre-emption by the state can co-exist with self-government powers of a municipality is if there is an express prohibition by statute which forbids local governments with self-government powers from acting in a certain area. The doctrine of implied pre-emption, by definition, cannot apply to local governments with self-government powers. Tipco Corp. Inc. v. City of Billings (1982), 197 Mont. 339, 642 P.2d 1074. We look then to the statutes to determine if there has been an express prohibition against local governments regulating garbage.

The powers specifically denied to local governments are enumerated in section 7-1-111, MCA. Billings Firefighters Local 521 v. Billings (Mont. 1985), 694 P.2d 1335, 42 St.Rep. 112. "A local government unit with self-government powers is prohibited the exercise of the following: . . . (4) any power that prohibits the grant or denial of a certificate of public convenience and necessity." Garbage disposal service

operators are required to get a certificate of public convenience and necessity issued by the PSC prior to doing business. Section 69-12-314, MCA. The certificate grants the carriers the right to operate their business upon the public streets. Barney v. Board of Railroad Comm'rs (1932), 93 Mont. 115, 138, 17 P.2d 82, 88.

The decision of the voter of the City of Billings, that the City should provide garbage pick-up services for its residents in no way prohibits the grant or denial of a certificate of public necessity. The City has not refused to allow garbage service companies to operate despite their certificate, nor has the City allowed garbage service companies to operate without a certificate. The City is simply exercising its self-government powers to provide a service for its residents and taxing them for that service. This is clearly within the self-government powers of Billings and does not conflict with state law.

We affirm the judgment of the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

John Conway Harrison

J. C. Faulkerson

William E. Hurst

Justices