JUSTICE LEAPHART
delivered the Opinion of the Court.
¶1 Petitioners requested this Court to accept original jurisdiction over their petition for declaratory judgment and declare House Bill 758 (HB 758), enacted by the 2003 Montana Legislature unconstitutional. Act approved Apr. 23, 2003, ch. 471, 2003 Mont. Laws 1797 (codified at § 7-1-120, MCA). By order dated October 22, 2003, we accepted original jurisdiction of the following four issues:
¶2 1. Whether HB 758 enacted in violation of Article V, Section 11(3), of the Constitution of Montana;
¶3 2. Whether HB 758 unconstitutionally deprives local governments and the people of the right of self-government in violation of Article XI, Section 6, of the Constitution of Montana;
¶4 3. Whether HB 758 unconstitutionally infringes on either (or both) the right of popular sovereignty (Article II, Section 1, of the Constitution of Montana) or the right of self-government (Article II, Section 2, of the Constitution of Montana); and
¶5 4. Whether Petitioners are entitled to their reasonable attorney fees under the Private Attorney General doctrine.
*73 ¶6 Following briefing by the parties and various amici curiae, as well as oral argument, we determine that § 7-1-120, MCA, does not constitute a prohibition of self-governing powers under Article XI, Section 6, of the Montana Constitution. Accordingly, we need not address the other constitutional challenges.
BACKGROUND
¶7 The parties agree that, in the recent past, four charter government cities with self-governing powers (Helena, Missoula, Bozeman, and Great Falls) have adopted local ordinances limiting-or prohibiting altogether-the smoking of tobacco products in buildings open to the public. Only one, Helena, has adopted an ordinance that applies, without limitation, to premises with state licenses for the operation of video gambling machines (VGMs). In response to these ordinances, the Legislature enacted HB 758 that imposes a surcharge fee on VGMs and exempts establishments that have VGMs on the premises from local government smoking ordinances that are more stringent than the Montana Clean Indoor Air Act of 1979 (MCIAA), §§ 50-40-101 to 109, MCA. Petitioners brought this action to request that we declare HB 758 unconstitutional under various provisions of the Montana Constitution.
¶8 We address the constitutional issues before us pursuant to well-established principles. We presume a legislative enactment to be constitutional. Powder River County v. State, 2002 MT 259, ¶ 73, 312 Mont. 198, ¶ 73, 60 P.3d 357, ¶ 73. “The question of constitutionality is not whether it is possible to condemn, but whether it is possible to uphold the legislative action ....” Powder River County, ¶ 73. Thus, a legislative enactment will not be declared invalid unless it conflicts with the constitution beyond a reasonable doubt. Powder River County, ¶ 73. “The party challenging a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt and, if any doubt exists, it must be resolved in favor of the statute.” Powder River County, ¶ 74.
DISCUSSION
¶9 Under the 1972 Montana Constitution, then-existing local governing units retained the same powers they had under the 1889 Montana Constitution (i.e. those powers specifically provided by law), although the 1972 Montana Constitution, Article XI, Section 4(2), mandated that such powers be liberally construed. The 1972 Montana Constitution then created a new category of local government by allowing local governing units to adopt self-governing charters. In *74 contrast to local governing units without self-governing powers, which are creatures of the state that have only those powers conferred by law, a local governing unit with a self-governing charter can exercise any power not prohibited by the constitution, law, or charter. Montana Constitution, Article XI, Section 6, provides:
Section 6. Self-government powers. A local government unit adopting a self-government charter may exercise any power not prohibited by this constitution, law, or charter. This grant of self-government powers may be extended to other local government units through optional forms of government provided for in section 3.
(Emphasis added.) Significantly, “the ‘shared powers’ concept does not leave the local unit free from state control; it does, however, change the basic assumption concerning the power of local government. At present, that [sic] assumption is that local government lacks power unless it has been specifically granted. Under the shared powers concept, the assumption is that local government possesses the power, unless it has been specifically denied.” Montana Constitutional Convention, Comments on Committee Proposal, Feb. 19,1972, p. 797.
¶10 To maintain the presumption that the locality retains all powers the Legislature does not prohibit, the Legislature must expressly-and not impliedly-delineate those prohibitions. As we previously decided, “[t]he only way the doctrine of pre-emption by the state can co-exist with self-government powers of a municipality is if there is an express prohibition by statute which forbids local governments with self-government powers from acting in a certain area. The doctrine of implied pre-emption, by definition, cannot apply to local governments with self-government powers.”D & F Sanitation Serv. v. City of Billings (1986), 219 Mont. 437, 445, 713 P.2d 977, 982. All prohibitions must be explicit. D & F Sanitation Serv., 219 Mont. at 445, 713 P.2d at 982.
¶11 In the case sub judice, the Legislature has exempted VGM establishments from local ordinances that are more restrictive than the MCIAA.
Section 1. Premises with video gambling machines-local smoking ordinance no more restrictive than state law. An establishment that has been granted a permit under Title 23, chapter 5, part 6, for the placement of video gambling machines on the premises is exempt from any local government ordinance that is more restrictive than the provisions of Title 50, chapter 40, part 1.
Section 7-1-120, MCA (emphasis added).
*75 ¶12 The question we must address is whether this exemption constitutes an express prohibition that forbids local governments with self-government powers from acting in a certain area. D & F Sanitation Serv., 219 Mont. at 445, 713 P.2d at 982. See Gregory v. Ashcroft (1991), 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (discussing the need for unmistakable clarity when Congress intends to preempt powers of the states).
“[I]f Congress intends to alter the ‘usual constitutional balance between the States and the Federal Government,’ it must make its intention to do so ‘unmistakably clear in the language of the statute.’ Atascadero State Hospital v. Scanlon, 473 U.S. 234, 242 (1985); see also Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 99 (1984). Atascadero was an Eleventh Amendment case, but a similar approach is applied in other contests. Congress should make its intention ‘clear and manifest’ if it intends to pre-empt the historic powers of the States. Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947). ... ‘In traditionally sensitive areas, such as legislation affecting the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision.’ United States v. Bass, 404 U.S. 336, 349 (1971).” Will v. Michigan Dept. of State Police, 491 U.S. 58, 65 (1989).
Gregory, 501 U.S. at 460-61, 111 S.Ct. at 2401, 115 L.Ed.2d at 424 (alterations in original).
¶13 We analyze this question by determining, first, whether an exemption is the same as a prohibition and, second, whether the city ordinances regulating smoking in buildings open to the public constitute the regulation of gambling.
¶14 The Legislature can effect a prohibition under Article XI, Section 6, through express prohibitory language. See § 7-1-111, MCA (“A local government unit with self-government powers is prohibited from exercising the following: ...”). Alternatively, a legislative prohibition can arise through a direct inconsistency between a state legislative act and the legislation of a self-governing unit. For example, the City of Billings could not supersede the state statutory requirement that charges against a suspended firefighter must be presented to the city council for a hearing. Billings Firefighters Local 521 v. City of Billings, 1999 MT 6, ¶¶ 10-25, 293 Mont. 41, ¶¶ 10-25, 973 P.2d 222, ¶¶ 10-25. ¶15 On the question whether § 7-1-120, MCA, contains express prohibitory language, the State argues that, although the legislature did not use the word “prohibited,” the exemption created by the statute *76 is tantamount to a prohibition. We disagree. To exempt is not to prohibit. A prohibition cuts off the power to act in the first instance. See Ortiz v. Pennsylvania (Pa. 1996), 681 A.2d 152, wherein the home-rule municipalities of Philadelphia and Pittsburgh adopted ordinances banning assault weapons. The Pennsylvania Supreme Court declared the ordinances banning assault weapons were invalidated by a subsequent state law specifically denying municipalities any power to “in any manner regulate” the lawful ownership of firearms. Ortiz, 681 A.2d at 155. In contrast to such an express “prohibition,” an “exemption” assumes that there is authority or power to act and grants freedom or immunity from that power. The American Heritage Dictionary 1046 (William Morris, ed., 1969) (defining prohibit as “1. To forbid by authority. 2. To prevent or debar.”); The American Heritage Dictionary 622 (4th ed., 2000) (defining the adjective exempt as “1. Freed from an obligation, a duty, or a liability to which others are subject; excused: persons exempt from jury duty; income exempt from taxation; a beauty somehow exempt from the aging process”). In other words, an exemption is an exception to, not a denial o/the power to act. See Town Pump, Inc. v. Bd. of Adjustment of Red Lodge, 1998 MT 294, ¶ 41, 292 Mont. 6, ¶ 41, 971 P.2d 349, ¶ 41 (“We conclude that Montana has not specifically denied Red Lodge’s power to regulate the sale of alcohol.” (emphasis added)).
¶16 The Legislature has very clearly delineated fourteen powers that self-governing municipalities are “prohibited” from exercising. Section 7-1-111, MCA. It has also set forth five specific powers that local governments with self-government powers are “prohibited” from exercising “unless the power is specifically delegated by law ....” Section 7-1-112, MCA. Together, these two statutes constitute prohibition through express statutory language. The power to regulate indoor smoke, however, is not listed in either of these prohibitory statutes. See §§ 7-1-111 to 112, MCA. We hold that, in passing § 7-1-120, MCA, the Legislature did not effect an express prohibition of self-governing powers.
¶17 The State contends that it has pre-empted the area of state licensed VGMs and that the city ordinances are inconsistent with that pre-emption. The Legislature has provided through express statutory language that local governments with self-government powers are “prohibited” “the power to regulate any form of gambling, lotteries, or gift enterprises.” Section 7-1-112(5), MCA. The question is, have the cities, in passing clean air ordinances, attempted to regulate a “form of gambling” in contravention of the express prohibition? The answer is no. The cities did not regulate gambling or video gaming in any *77 sense of the word. They regulated clean indoor air. If the regulation of clean indoor air incidentally impacts VGM establishments, that does not mean that they have been regulated qua VGM establishments. Rather, they have been regulated as buildings open to the public. The city ordinances have incidental impacts on all buildings open to the public. This includes buildings housing state regulated and licensed enterprises, for example drug stores, chiropractic offices, and law offices. In prohibiting indoor smoking, the cities have not infringed upon the state regulation of pharmacists and chiropractors or upon this Court’s regulation of attorneys. Were a city ordinance to require that owners of buildings (including VGM establishments) keep their sidewalks clear of snow, we would not conclude that the cities have regulated gambling.
¶18 In conclusion, we hold that the challenged statute, § 7-1-120, MCA, does not set forth a prohibition of self-governing powers under Article XI, Section 6, of the Montana Constitution. Accordingly, it does not preempt any no-smoking ordinances adopted by any self-governing entity. Since § 7-1-120, MCA, has no force and effect, we need not address the other constitutional challenges under Montana Constitution Article V, Section 11(3) and Article II, Sections 1 and 2.
¶19 In concluding that the Helena ordinance is more restrictive than the MCIAA, Justice Warner’s dissent depicts the MCIAA as protecting the “right” or privilege of proprietors to designate areas as smoking. This analysis ignores the fact that the MCIAA was enacted to advance the Legislature’s “constitutional obligations under Article II, section 3 ...” (right to a clean and healthy environment) and “Article XI of the Montana Constitution ....” Section 50-40-102, MCA. Contrary to the dissent’s characterization, the MCIAA does not confer any rights or privileges on proprietors. Rather, it requires that proprietors place appropriate signs in designated areas. That this requirement is merely a means to an end (separating nonsmokers from smokers), rather than a right or a privilege, is illustrated by the fact that a proprietor who fails to comply is subject to criminal sanctions. Section 50-40-109, MCA. It would be ironic indeed if the MCIAA, designed to promote a clean and healthy environment, was interpreted as a declaration of rights for proprietors of VGM establishments.
Attorney Fees
¶20 Petitioners have requested an award of attorney fees under the private attorney general doctrine enunciated in Montanans for the Responsible Use of the Sch. Trust v. State ex rel. Bd. of Land Comm’rs, 1999 MT 263, 296 Mont. 402, 989 P.2d 800 (Montrust). In setting forth the private attorney general theory in Montrust, we adopted the *78 following three factors: “(1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, [and] (3) the number of people standing to benefit from the decision.” Montrust, ¶ 66 (quoting Serrano v. Priest (Cal. 1977), 569 P.2d 1303, 1314).
¶21 In Montrust we acknowledged the danger that the first prong could “ ‘thrust [courts] into the role of making assessments of the relative strength or weakness of public policies furthered by their decisions and of determining at the same time which public policy should be encouraged by an award of fees, and which not-a role closely approaching that of the legislative function.’ ” ¶ 66 (quoting Serrano, 569 P.2d at 1314). Accordingly, we adopted the California Supreme Court’s rationale in awarding private attorney general fees only in litigation vindicating constitutional interests. Montrust, ¶ 66. Our holding in the present case amounts to a declaration that § 7-1-120, MCA, is ineffectual rather than unconstitutional; therefore, without the vindication of a constitutional interest, this case does not warrant private attorney general fees.
JUSTICES NELSON and REGNIER concur.