DA 14-0024

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 274

CITY OF MISSOULA,

      Plaintiff and Appellee,

  v.

AMBER ARMITAGE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                     In and For the County of Missoula, Cause No. DC 13-420
                     Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Terry Wallace, Wallaw, Missoula, Montana

        For Appellee:

        Timothy C. Fox, Montana Attorney General, Micheal S. Wellenstein, Assistant Attorney General, Helena, Montana

        Jim Nugent, Missoula City Attorney, Gary Hendricks, Deputy City Attorney, Missoula, Montana

                           Submitted on Briefs:  August 6, 2014
                                    Decided:  October 9, 2014

Filed:

_____
                Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Amber Armitage appeals from an order of the Fourth Judicial District Court, Missoula County, affirming a Municipal Court decision denying her motion to suppress the results of a breath alcohol test.  We affirm.

¶2     We restate the following issues for review:

¶3     *Issue One:  Whether the City of Missoula has authority to enact ordinances creating a misdemeanor penalty for the refusal to submit to a requested breath test.*

¶4     *Issue Two:  Whether conducting a post-arrest breath test with Armitage's consent was an unreasonable search and seizure.*

¶5     *Issue Three:  Whether Missoula ordinances criminalizing the refusal to submit to a breath test unconstitutionally impair the freedom of speech.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶6     At approximately 10:00 p.m. on November 24, 2012, Missoula Police Officer Nathan Mattix responded to a 911 call reporting a possibly impaired driver.  The caller reported she was following a vehicle that was traveling below the speed limit, not maintaining a constant speed, and drifting into other lanes of traffic.  The caller gave a description of the vehicle and its license plate number.  Officer Mattix identified the vehicle while it was stopped at a red light.  Upon accelerating, the vehicle drifted to the right and its tires crossed the white line on the right side of the road.  Officer Mattix also learned from the 911 dispatcher that the vehicle's registration was expired.  Officer Mattix decided to conduct an investigative stop.

¶7     The driver of the vehicle was Amber Armitage.  Officer Mattix read Armitage a preliminary alcohol screening test (PAST) advisory, which informed her that by operating a vehicle on public roads, she had given her implied consent to a preliminary breath test.  He also notified her of her right to refuse that test.  He informed her that pursuant to state law,

2

her license could be suspended for up to one year for refusing the test. He also informed her that pursuant to Missoula city ordinances, she could be charged with a misdemeanor and fined $500 for refusing the test. Armitage refused the test. Officer Mattix did not seize Armitage's license. Armitage was not fined for refusing the test.

¶8 Officer Mattix placed Armitage under arrest and transported her to the police station for booking. Officer Mattix read Armitage a "full" implied consent warning, again notifying her that under Missoula city ordinances, refusal to submit to a breath test is a misdemeanor offense punishable by a $500 fine. Armitage then agreed to provide a breath sample at the police station.[1] The breath test showed that her blood alcohol concentration was 0.134, exceeding the legal limit of 0.08.

¶9 Armitage was charged with negligent endangerment, driving under the influence of alcohol, operating a vehicle with expired registration, failure to carry proof of insurance, and operation of a noncommercial vehicle with a blood alcohol concentration of 0.08 or more. She filed a motion to suppress all evidence obtained as a result of the investigative stop. The Municipal Court denied the motion. Armitage entered a conditional guilty plea to the charge of operating a vehicle with a blood alcohol concentration of 0.08 or more, reserving her right to appeal the Municipal Court's denial of her motion to suppress. The remaining charges were dismissed.

---

[1] The Special Concurrence suggests that because Armitage consented to administration of the test after she was arrested, our Opinion "constitutes an improper advisory opinion." However, Armitage did refuse the PAST, thus is subject to prosecution under the ordinance, and is therefore in a position to properly place this matter before the courts for consideration.

¶10    Armitage appealed the denial of her motion to suppress to the District Court, claiming Officer Mattix did not have a particularized and objective basis for making the investigative stop and violated §§ 61-8-402 and -409, MCA, by administering a breath test despite her initial refusal.  She also claimed the Missoula ordinances imposing a $500 fine for refusing to give a breath sample were invalid because they conflicted with state law and violated her constitutional rights.  The District Court affirmed the decision of the Municipal Court, holding that the investigative stop was justified by particularized suspicion, the Missoula ordinances were valid, and Armitage freely consented to the breath test administered at the police station.  Armitage appeals those portions of the District Court's order addressing the validity of the Missoula ordinances and the procedures followed in administering the breath test.

**STANDARD OF REVIEW**

¶11    When reviewing the decision of a municipal court, a district court functions as an intermediate appellate court.  *City of Bozeman v. Cantu*, 2013 MT 40, ¶ 10, 369 Mont. 81, 296 P.3d 461.  On appeal from the district court, this Court examines the record independently of the district court's decision, applying the appropriate standard of review.  *Cantu*, ¶ 10.   We review constitutional issues and questions of law de novo.  *City of Missoula v. Girard*, 2013 MT 168, ¶ 10, 370 Mont. 443, 303 P.3d 1283.

4

**DISCUSSION**

¶12    *Issue One: Whether the City of Missoula has authority to enact ordinances creating a misdemeanor penalty for the refusal to submit to a requested breath test.*

¶13    Armitage claims the City of Missoula does not possess the authority to enact ordinances creating a misdemeanor penalty for the refusal to submit to a requested breath or blood test, because state law already addresses the issue. We first address the nature and extent of the City's authority, and then examine the relevant statutes and ordinances governing the administration of breath and blood alcohol testing.

¶14    In 1997, the City of Missoula adopted a self-government charter. A local government operating under a self-government charter may exercise any power not prohibited by the Montana Constitution, state law, or the charter itself. Mont. Const. art. XI, § 6; § 7-1-101, MCA. The powers of a local government operating under a self-government charter must be liberally construed, with reasonable doubts resolved in favor of the existence of local government power. Section 7-1-106, MCA.

¶15    Local governments were given the option of adopting self-government charters under Article XI, Section 5 of the 1972 Montana Constitution. Prior to the adoption of the 1972 Constitution, the basic assumption was that the source of municipal power was the state. *City of Billings v. Herold*, 130 Mont. 138, 141-42, 296 P.2d 263, 264-65 (1956). Municipalities could exercise only those powers expressly granted them by the legislature. *D & F Sanitation Serv. v. City of Billings*, 219 Mont. 437, 444, 713 P.2d 977, 981 (1986); *Tipco Corp. v. City of Billings*, 197 Mont. 339, 344, 642 P.2d 1074, 1077 (1982). The state could delegate to municipalities the power to regulate matters of local concern. *Herold*, 130

5

Mont. at 142, 296 P.2d at 265. Regarding matters of statewide concern, if the state chose to regulate in a particular field, it was said to have occupied that field to the exclusion of municipalities under the doctrine of implied preemption. *D & F Sanitation Serv.*, 219 Mont. at 444, 713 P.2d at 982. Driving under the influence was deemed an area of statewide concern, and therefore municipalities were without authority to enact ordinances regulating the subject. *Herold*, 130 Mont. at 154, 296 P.2d at 271.

¶16 The 1972 Constitution changed these basic assumptions about the role of municipalities. *D & F Sanitation Serv.*, 219 Mont. at 445, 713 P.2d at 982. Because local governments with self-government powers are permitted to exercise any power not specifically prohibited, any limitation on their authority must be express, not implied. *Am. Cancer Soc'y v. State*, 2004 MT 376, ¶ 10, 325 Mont. 70, 103 P.3d 1085. "The doctrine of implied pre-emption, by definition, cannot apply to local governments with self-government powers." *D & F Sanitation Serv.*, 219 Mont. at 445, 713 P.2d at 982 (citing *Tipco Corp.*, 197 Mont. at 344, 642 P.2d at 1077). Therefore, our opinion in *Herold*, in which we held that the state had implicitly preempted local regulation of driving under the influence, has no applicability to ordinances enacted by the City of Missoula, which has self-government powers. *See D & F Sanitation Serv.*, 219 Mont. at 445, 713 P.2d at 982; *Herold*, 130 Mont. at 154, 296 P.2d at 271.

¶17 The authority of a local government with self-government powers can be limited by express prohibitory language. Section 7-1-101, MCA; *Am. Cancer Soc'y*, ¶ 14; *State ex rel. Swart v. Molitor*, 190 Mont. 515, 518, 621 P.2d 1100, 1102 (1981). State law prohibits local governments with self-government powers from acting in several specific areas, including

6

public education, professional and occupational licensing, and unemployment and worker's compensation. Section 7-1-111, MCA. Driving under the influence is not included in this list. *See* § 7-1-111, MCA. In certain other areas, local governments with self-government powers may act only pursuant to a specific delegation of authority. Section 7-1-112, MCA. These areas include taxation and gambling. Section 7-1-112, MCA. Driving under the influence is not included. *See* § 7-1-112, MCA.

¶18 In areas affirmatively subjected to state regulation or control, local governments with self-government powers are expressly prohibited from exercising any power that is inconsistent with state law or administrative regulation. Section 7-1-113(1), MCA. The exercise of power is inconsistent with state law or regulation if it establishes standards or requirements that are lower or less stringent than the state enactments. Section 7-1-113(2), MCA. Further, local authorities are prohibited from enacting or enforcing any ordinance in conflict with state law governing traffic regulation. Section 61-8-103, MCA. Local authorities, however, may adopt additional traffic regulations which are not in conflict with state traffic regulations. Section 61-8-103, MCA.

¶19 State law provides for two separate tests to be given to persons suspected of driving under the influence: one before arrest, and one after. Sections 61-8-402, -409, MCA; *Nichols v. Dept. of Justice*, 2011 MT 33, ¶¶ 10-11, 359 Mont. 251, 248 P.3d 813; *Smith v. Driver's Improvement Bureau*, 1998 MT 94, ¶ 14, 288 Mont. 383, 958 P.2d 677. A preliminary alcohol screening of a person's breath may be administered during an investigative stop, based upon a particularized suspicion, for the purpose of estimating the person's alcohol concentration. Section 61-8-409(1), MCA. If the PAST is refused, the

person's driver's license may be administratively suspended for up to one year. Section 61-8-409(3), MCA. Once refused, a PAST may not be administered except under circumstances allowing the officer to apply for a warrant. Section 61-8-409(4), MCA.

¶20 If a person suspected of driving under the influence is arrested, a breath or blood test may be given, based upon probable cause, for the purpose of determining the presence of alcohol or drugs in the person's body. Section 61-8-402(1), (2), MCA. Submitting to a PAST does not satisfy the obligation to submit to post-arrest breath or blood testing. Section 61-8-409(2), MCA. If the arrested person refuses to submit to post-arrest breath or blood testing, the test may not be given except pursuant to a warrant. Section 61-8-402(4), (5), MCA; *see also State v. Minett*, 2014 MT 225, ¶ 12, 376 Mont. 260, 332 P.3d 235. The person's driver's license may be suspended for up to six months for a first refusal of a test and up to one year for a second refusal. Section 61-8-402(7), MCA.

¶21 Missoula's ordinances governing breath and blood alcohol testing of persons suspected of driving under the influence read as follows:

> **10.56.020 Unlawful to refuse to submit to a breath or blood alcohol and/or drug test.** It is unlawful and constitutes a misdemeanor offense for any person operating or in actual physical control of a motor vehicle suspected of doing so under the influence of alcohol and/or drugs to refuse to submit to one or more breath or blood alcohol and/or drug tests to detect alcohol and/or drugs requested and designated by any peace officer as defined by Montana State law. Prior to charging a person with a violation of this section a peace officer must inform the person requested to take the designated test that refusing the breath or blood alcohol and/or drug test is a misdemeanor offense under Missoula Municipal Code and identify the penalties associated with the offense. If any arrested person refuses to submit to one or more breath or blood alcohol and/or drug test requested and designated by a peace officer as provided for pursuant to Montana state law, the refused test may not be given. However, the person refusing to submit to any such requested breath or blood alcohol and/or drug test may be charged with a misdemeanor offense pursuant

to this section.

**10.56.030 Penalties.** The penalties for a violation of this chapter are established pursuant to this section. Incarceration is not a penalty for a violation of this chapter. A person convicted under this chapter shall be subject to a fine of $500.00, no portion of which may be suspended, waived or deferred by the court.

¶22 Missoula's ordinances imposing a $500 misdemeanor fine for refusing breath or blood testing are not less stringent than state law allowing administrative suspension of an individual's driver's license, and therefore are not inconsistent as defined by § 7-1-113(2), MCA. An individual who refuses breath or blood testing may be subject to both a $500 fine under city ordinances and a suspension of driving privileges under state law. The Missoula ordinances are additional regulations and pose no conflict with state law as contemplated by § 61-8-103, MCA. We hold the ordinances are valid.

¶23 *Issue Two: Whether conducting a breath test with Armitage's consent after her arrest was an unreasonable search and seizure.*

¶24 Armitage claims that because she refused to provide a breath sample during the investigative stop, she could not be asked to provide a sample again after her arrest. She cites § 61-8-409(4), MCA, which states that if a PAST is refused, it may not be given, and § 61-8-402(4), MCA, which states that if a post-arrest breath or blood alcohol test has been refused, it may not be given.

¶25 As discussed above, two distinct tests may be administered to a person suspected of driving under the influence of alcohol. Sections 61-8-402, -409, MCA; *Nichols*, ¶¶ 10-11; *Smith*, ¶ 14. Submitting to a PAST does not satisfy the obligation to submit to post-arrest breath or blood testing. Section 61-8-409(2), MCA. The refusal to submit to a PAST is

9

independent of the refusal to submit to post-arrest breath or blood testing, with the exception that an individual's license may not be suspended more than once for multiple refusals arising from the same incident. Section 61-8-409(6), MCA.

¶26 Armitage refused a PAST under § 61-8-409(3), MCA. She was then placed under arrest and asked to submit to post-arrest breath or blood testing at the police station pursuant to § 61-8-402, MCA. Her refusal of the PAST did not constitute a refusal of post-arrest testing. Armitage consented to post-arrest testing and willingly provided two breath samples. Officer Mattix did not violate statutory procedures by administering a post-arrest breath test with Armitage's consent.

¶27 *Issue Three: Whether Missoula ordinances criminalizing the refusal to submit to a breath test unconstitutionally impair the freedom of speech.*

¶28 Armitage claims the Missoula ordinances imposing a $500 fine for refusing to submit to breath or blood testing unconstitutionally interfere with her right to say, "I refuse." The ordinances proscribe conduct, not speech. A person who verbally informs the officer that he or she does not agree with the ordinances, but nevertheless submits to testing, may not be penalized. Conversely, an individual who does not say a word, but physically refuses to provide a sample, may be penalized. *See Johnson v. Div. of Motor Veh.*, 219 Mont. 310, 314, 711 P.2d 815, 817 (1985) ("[R]espondent's conduct constituted an implied refusal to take the breath test."). It is the act of refusing, not the speech accompanying that act, that triggers the misdemeanor penalty.

¶29 Moreover, Armitage was never charged under the ordinances in question, nor is there any evidence that the ordinances had a "chilling effect" on her speech during her interactions

with Officer Mattix. Armitage was not penalized for refusing testing during the investigative stop. She later consented to testing at the police station, during what the District Court accurately observed to be a "chatty and overtly friendly exchange." Armitage's freedom of speech was in no way inhibited.

¶30 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ PATRICIA COTTER

Justice Laurie McKinnon, specially concurring.

¶31 I agree with the Court's decision to affirm the denial of Armitage's motion to suppress. I would do so, however, on the basis that Armitage presented no credible evidence that she was coerced into taking the breath test. I believe the Court's decision addressing the validity of the Missoula ordinances, therefore, amounts to an improper advisory opinion. Furthermore, since the Court has chosen nonetheless to express its views on the ordinances' validity, I disagree with the Court's conclusion that the ordinances, which criminalize a refusal to take a breath or blood alcohol test, "pose no conflict with state [implied consent] law." Opinion, ¶ 22.

¶32 Initially, our decision today concerning the validity of the Missoula ordinances constitutes an improper advisory opinion. In *Plan Helena, Inc. v. Helena Regional Airport*

11

*Authority Board*, 2010 MT 26, 355 Mont. 142, 226 P.3d 567, an action was filed in the First Judicial District Court regarding the proposal of the Helena Regional Airport Authority Board (HRAA) to lease nine acres of its land to Blue Cross Blue Shield of Montana (BCBS). The primary issue concerned which statutory scheme within the Airport Authorities Act (Title 67, chapter 11, MCA) governed the lease of property owned by HRAA to private commercial businesses whose activities are not specifically aeronautically related. Ultimately, BCBS determined not to go through with the lease and was dismissed from the case. This event rendered the matter moot. Nevertheless, because "the parties desired a ruling on the merits," the district court proceeded to issue two orders concerning the applicability of the statutes. *Plan Helena*, ¶¶ 3-5. Plan Helena (the party dissatisfied with the district court's rulings) then appealed to this Court.

¶33     On appeal, we unanimously vacated the district court's orders and remanded with instructions to dismiss the action as nonjusticiable. We began with the well-established principles that the judicial power of Montana's courts is limited to justiciable controversies and that Montana courts, therefore, may not render advisory opinions. *Plan Helena*, ¶¶ 6, 9. We explained that the "cases" and "controversies" that are within the judicial power to determine must "admit[ ] of specific relief through decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts, or upon an abstract proposition." *Plan Helena*, ¶ 9 (internal quotation marks omitted). We reiterated that courts have an independent obligation to determine whether jurisdiction exists—including whether the justiciability requirements have been met—and that a court lacks jurisdiction to give advisory opinions. *Plan Helena*, ¶ 11. Based on these principles,

we observed that once BCBS determined not to go through with the lease and was dismissed from the case, the dispute over the interpretation of the Airport Authorities Act became moot and the district court no longer had a justiciable case or controversy before it. The district court was required, therefore, to dismiss the action at that point. *Plan Helena*, ¶ 12. The fact that the remaining parties in the suit desired a ruling on the merits could not create a justiciable controversy.

¶34 Critical to the present case is the fact that Armitage has *never* been charged with a violation of the Missoula ordinances for her refusal to provide a breath test upon Officer Mattix's initial request. This case, therefore, does not present a direct challenge to the ordinances, for Armitage has not been prosecuted under them.

¶35 Armitage apparently sought to challenge the ordinances collaterally, under the theory that the *threat* of being prosecuted for violating the ordinances coerced her into providing a breath sample later at the police station. This theory is questionable in light of our decision in *Nichols v. Department of Justice*, 2011 MT 33, 359 Mont. 251, 248 P.3d 813, where we indicated that advising a person of the consequences of refusing to provide a breath sample does not amount to an unconstitutional threat: "Nichols also could not have suffered a [search or seizure] due to the 'threat' of driver's license suspension. Nichols has not explained how the officer's explanation of the rights and consequences of her choices constituted either a 'threat' or an unconstitutional search or seizure." *Nichols*, ¶ 16.

¶36 But even assuming, for the sake of discussion, that a "threat" theory is a plausible basis for reaching the validity of the ordinances, this theory cannot apply here because the District Court specifically determined that Armitage's consent was given freely, and

13

Armitage has not pointed to any evidence refuting that determination. Following its review of the Municipal Court record, the District Court stated as follows:

> The evidence that was presented on the issue favors the City. The Defendant did not testify to present any evidence that she was "intimidated or acted against her will" when consenting to the Intoxilyzer at the Detention Center. . . . It is true that she refused an earlier request to take the preliminary breath test, but there is nothing in evidence to suggest duress or intimidation was at play when she reversed her decision and submitted to testing at the Detention Center. What the DVD shows is a chatty and overtly friendly exchange between Mattix and the Defendant at the Detention Center. There is absolutely nothing in the DVD to suggest that the Defendant was in any way intimidated or unwilling when she consented to take the Intoxilyzer, and in fact, the DVD portrays exactly the opposite.

¶37 Again, Armitage has pointed to no evidence refuting this determination by the District Court. While she makes conclusory assertions in her briefs on appeal that she was intimidated, such assertions do not establish this as fact. As we noted in *City of Helena v. Whittinghill*, 2009 MT 343, ¶ 21 n.2, 353 Mont. 131, 219 P.3d 1244, "[a] party can not establish facts in a case by asserting them in a brief. Those are nothing more than an attorney's statements, which are not evidence."

¶38 Accordingly, "[a]ny analysis of the underlying substantive issues in this case would be merely advisory because we cannot grant [Armitage] the relief [she] sought originally"—i.e., suppression of all evidence obtained as a result of the investigative stop. *Houden v. Todd*, 2014 MT 113, ¶ 27, 375 Mont. 1, 324 P.3d 1157. Whether this Court upholds the Missoula ordinances or strikes them down, such holding is entirely academic. Armitage is not entitled to any relief for the simple fact that she has suffered no injury as a result of the ordinances' application. She was not charged with an offense under the ordinances, nor was

she coerced or intimidated by the ordinances into giving her consent to the breath test at the police station.

¶39 For these reasons, we have no justiciable basis for considering the validity of the Missoula ordinances. Although the parties may desire to hear our views on the subject, "it is well established that a party cannot waive or confer jurisdiction by consent." *Big Spring v. Conway*, 2011 MT 109, ¶ 23, 360 Mont. 370, 255 P.3d 121; *accord Plan Helena*, ¶¶ 13-14. Our decision with regard to the ordinances is purely advisory, and I disagree with the Court's decision to reach the merits.

¶40 Since the Court has nonetheless chosen to address the validity of the ordinances, I feel constrained to express my disagreement with the Court's analysis. In my view, the Court disregards the clear statutory language of §§ 61-8-402 and -409, MCA, expressly creating a right to refuse a requested test, and our own precedents recognizing this statutory right of refusal. In scrutinizing whether there has been an express prohibition of self-government power, we ignore the fundamental inconsistency between the Missoula ordinances and the State's implied consent laws. The exercise of a statutory right cannot be punished as a misdemeanor.

¶41 Article XI, Section 6 of the Montana Constitution provides that "[a] local government unit adopting a self-government charter may exercise any power not prohibited by this constitution, law, or charter." The "shared powers" concept of Article XI, Section 6

> "does not leave the local unit free from state control; it does, however, change the basic assumption concerning the power of local government. At present [i.e., in 1972], th[e] assumption is that local government *lacks* power unless it has been specifically granted. Under the shared powers concept, the

assumption is that local government *possesses* the power, unless it has been specifically denied."

*Am. Cancer Socy. v. State*, 2004 MT 376, ¶ 9, 325 Mont. 70, 103 P.3d 1085 (quoting Montana Constitutional Convention, Comments on Local Government Committee Proposal, Feb. 19, 1972, p. 797) (emphases in the original Committee Comments).

¶42    Although we have stated that all prohibitions must be express, *D & F Sanitation Serv. v. City of Billings*, 219 Mont. 437, 445, 713 P.2d 977, 982 (1986), the limitations on self-government authority extend beyond the express prohibitions contained in § 7-1-111, MCA ("A local government unit with self-government powers is prohibited from exercising the following: . . . ."); § 7-1-112, MCA ("A local government with self-government powers is prohibited the exercise of the following powers unless the power is specifically delegated by law: . . . ."); and other statutory provisions expressly prohibiting local authority. Importantly, self-government authority may be limited not only by these express statutory prohibitions, but also where it is "inconsistent" or "in conflict" with constitutional or statutory provisions. Indeed, the Legislature recognized limitations to self-government authority based on inconsistencies with state law when it enacted § 7-1-113, MCA:

> (1) A local government with self-government powers is prohibited the exercise of any power in a manner inconsistent with state law or administrative regulation in any area affirmatively subjected by law to state regulation or control.
> (2) The exercise of a power is inconsistent with state law or regulation if it establishes standards or requirements which are lower or less stringent than those imposed by state law or regulation.
> (3) An area is affirmatively subjected to state control if a state agency or officer is directed to establish administrative rules governing the matter or if enforcement of standards or requirements established by statute is vested in a state officer or agency.

Further, and more specific to the instant proceedings, § 61-8-103, MCA, requires uniformity throughout the state with respect to the regulation of impaired drivers:

> The provisions of this chapter shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein and no local authority shall enact or enforce any ordinance, rule, or regulation in conflict with the provisions of this chapter unless expressly authorized herein. Local authorities may, however, adopt additional traffic regulations which are not in conflict with the provisions of this chapter.

¶43 Within this framework, therefore, the Court must examine Missoula's ordinances in relation to applicable provisions of law. It is not enough merely to look for an express prohibition and, upon finding none, conclude that the ordinances are a valid exercise of the City's authority. To be valid, the ordinances may not be inconsistent with Montana's Constitution, the United States Constitution, or the laws of either jurisdiction.

¶44 Montana law permits law enforcement to administer two separate breath tests during a criminal DUI investigation. Sections 61-8-402, -409, MCA. Both sections state that a driver is considered impliedly to have consented to a test of the person's breath when the person operates or is in actual physical control of a vehicle upon ways of this state. We have long recognized that "driving in Montana is a privilege, not a right. . . . If a person wishes to enjoy the benefits of this privilege, he must accept the concomitant responsibilities." *State v. Michaud*, 2008 MT 88, ¶ 58, 342 Mont. 244, 180 P.3d 636.

¶45 Section 61-8-409, MCA, states that, upon particularized suspicion that a person was driving while under the influence, a peace officer may request a preliminary alcohol screening test. Pursuant to § 61-8-409(3), MCA, the officer "shall inform the person of *the right to refuse the test*" (emphasis added) and that the refusal will result in the suspension of

the person's driver's license for up to one year. The express provisions of this statute thus unequivocally establish a "right to refuse the test." Furthermore, if a person refuses the test, the test may not be given except pursuant to the provisions of §§ 61-8-402(5) and 46-5-224, MCA, requiring the issuance of a search warrant. Section 61-8-409(4), MCA. A search warrant may be issued only upon a showing of "facts sufficient to support probable cause to believe" that an offense has been committed and that evidence may be found.[1] Section 46-5-221(1), (2), MCA.

¶46　Section 61-8-402, MCA, provides for the administration of tests following the person's arrest for DUI. While the officer is not required to inform the person of his or her right to refuse a blood or breath test, the statute expressly prohibits the officer from administering the test upon the person's refusal: "If an arrested person refuses to submit to one or more tests requested and designated by the officer . . . , the refused test or tests may not be given except" pursuant to a validly issued search warrant. Section 61-8-402(4), MCA. Thus, §§ 61-8-402 and -409, MCA, both recognize a right of refusal.

¶47　This Court has consistently recognized the statutorily created right of a person to refuse a test. In *State v. Turbiville*, 2003 MT 340, 318 Mont. 451, 81 P.3d 475, we explained that "the option to refuse a breath or blood test is not a matter of due process, but a matter of grace bestowed by the Legislature." *Turbiville*, ¶ 16 (discussing § 61-8-402, MCA, and

---

[1] In practice, a peace officer possessing probable cause to believe that a driver is impaired would not apply for a warrant to administer a preliminary alcohol screening test because the results are generally inadmissible in a criminal proceeding. *See State v. Lozon*, 2012 MT 303, ¶ 14, 367 Mont. 424, 291 P.3d 1135; *State v. Weldele*, 2003 MT 117, ¶¶ 57-58, 315 Mont. 452, 69 P.3d 1162. The officer would simply apply for a warrant to administer an Intoxilizer or blood test pursuant to § 61-8-402, MCA.

citing *City of Helena v. Barrett*, 245 Mont. 35, 37, 798 P.2d 544, 545 (1990)). In *Nichols v. Department of Justice*, 2011 MT 33, 359 Mont. 251, 248 P.3d 813, we observed that "Montana's *statutory right of refusal* affords arrested intoxicated drivers even greater protections from self-incrimination than required either by the United States or Montana Constitution." *Nichols*, ¶ 16 (emphasis added) (citing *South Dakota v. Neville*, 459 U.S. 553, 565, 103 S. Ct. 916, 923 (1983), and *Turbiville*, ¶ 16).

¶48 The above-referenced statutes are consistent with fundamental principles underlying the Fourth Amendment. This provision, which states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause," would be meaningless if a person could not refuse a warrantless intrusion. Citizens have the right to insist that a peace officer obtain authorization from a "neutral and detached magistrate" before the officer may take a blood sample; the requirement to obtain a warrant "before allowing a law enforcement officer to invade another's body in search of evidence of guilt is indisputable and great." *Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552, 1558 (2013) (internal quotation marks omitted).

¶49 Accordingly, the statutory right to refuse a test is not only embedded in Montana's implied consent laws and warrant requirement, but is also consistent with fundamental principles underlying the Fourth Amendment and a citizen's right to say "no" to a warrantless invasion of their person. The exercise of a right expressly created by the State's implied consent laws, recognized by this Court's precedents, and premised upon fundamental Fourth Amendment principles cannot be the basis for punishment by the City of

Missoula as a misdemeanor. Mont. Const. art. XI, § 6; § 61-8-103, MCA. The City's ordinances directly conflict with these statutory and constitutional provisions by penalizing a person for exercising a right to refuse a warrantless test. I therefore believe the Court errs in holding that the ordinances are valid.

¶50 Nevertheless, because Armitage failed to present any credible evidence that she was coerced into providing a breath sample by the threat of prosecution under the ordinances, I agree with the denial of her motion to suppress. I therefore specially concur.

/S/ LAURIE McKINNON

Justice James Jeremiah Shea joins the Special Concurrence of Justice Laurie McKinnon.

/S/ JAMES JEREMIAH SHEA