FILED

07/25/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0746

DA 15-0746

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 184

THE CLARK FORK COALITION, a non-profit
organization with senior water rights, KATRIN
CHANDLER, an individual with senior water
rights BETTY J. LANNEN, an individual with
senior water rights, POLLY REX, an individual
with senior water rights, and JOSEPH MILLER,
an individual with senior water rights,

        Petitioners and Appellees,

    v.

JOHN E. TUBBS, in his official capacity as Director
of the Montana Department of Natural Resources
and Conservation and THE MONTANA
DEPARTMENT OF NATURAL RESOURCES AND
CONSERVATION (DNRC), an executive branch agency
of the State of Montana,

        Respondents and Appellants.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis And Clark, Cause No. BDV-2010-874
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Brian C. Bramblett, Laura Farkas, Special Assistant Attorneys General,
                Montana Department of Natural Resources and Conservation, Helena,
                Montana

        For Appellees:

                Matthew K. Bishop, Laura King, Western Environmental Law Center,
                Helena, Montana

                                Submitted on Briefs: May 31, 2017
                                Decided: July 25, 2017

Filed:

                              Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 The Clark Fork Coalition, Katrin Chandler, Betty Lannen, Polly Rex, and Joseph Miller (collectively, "the Coalition") challenged the validity of a Department of Natural Resources and Conservation administrative rule concerning groundwater appropriations exempt from permitting requirements. The First Judicial District Court invalidated the rule. We affirmed. *Clark Fork Coalition v. Tubbs*, 2016 MT 229, 384 Mont. 503, 380 P.3d 771 (hereafter "*Clark Fork I*"). The Coalition sought fees under the private attorney general doctrine, and the District Court granted its motion. The Department appeals the District Court's order awarding fees to the Coalition.

¶2 We reverse.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 The Montana Water Use Act (hereafter "the Act") exempts certain new groundwater appropriations from permitting requirements. Section 85-2-306, MCA. In part, it exempts appropriations outside of stream depletion zones that do not exceed 35 gallons per minute and 10 acre-feet per year, "except that a *combined appropriation* from the same source by two or more wells or developed springs exceeding 10 acre-feet, regardless of the flow rate, requires a permit." Section 85-2-306(3)(a)(iii), MCA (emphasis added). The statute does not define the phrase "combined appropriation."

¶4 The Department promulgated a rule in 1987 that stated, "Groundwater developments need not be physically connected nor have a common distribution system to be considered a 'combined appropriation.'" Admin. R. M. 36.12.101(7) (1987) (hereafter "1987 Rule"). The Department issued a new rule in 1993 that defined a

2

"combined appropriation" as "an appropriation of water from the same source aquifer by two or more groundwater developments, that are physically manifold into the same system." Admin. R. M. 36.12.101(13) (1993) (hereafter "1993 Rule").

¶5 In 2009, the Coalition filed a petition for declaratory ruling with the Department asking it to invalidate the 1993 Rule. A Department hearing examiner considered, but ultimately denied, the Coalition's petition, concluding that the 1993 Rule did not conflict with the Act. The hearing examiner nonetheless ordered the Department to initiate proposed rulemaking to repeal the 1993 Rule because of increasing demands on water resources in Montana. For reasons not relevant to the issue on appeal, the Department did not repeal and replace the 1993 Rule.

¶6 The Coalition filed a petition for judicial review in the District Court in 2010, challenging the validity of the 1993 Rule and the hearing examiner's denial of its petition. The District Court invalidated the 1993 Rule, reinstated the 1987 Rule, and required the Department to develop a new rule consistent with its order. The court reasoned that the 1993 Rule's definition of "combined appropriation" "violates not only the spirit and legislative intent behind the Water Use Act, but . . . [also] the legislative intent in the enactment of the exempt well statute."

¶7 The Montana Well Drillers Association, the Montana Association of Realtors, and the Montana Building Industry Association appealed the District Court's order. The Department did not participate in the appeal. We affirmed the District Court's invalidation of the 1993 Rule and its reinstatement of the 1987 Rule, but reversed its order directing the Department to initiate new rulemaking. *Clark Fork I*, ¶ 46. We held

3

that the Rule was inconsistent with the statute and was therefore invalid. *Clark Fork I*, ¶ 28.

¶8 Prior to our decision in *Clark Fork I*, the Coalition had moved for fees under the private attorney general doctrine, and the District Court had granted that motion. The court rejected the Department's argument that it was protected from liability by quasi-judicial immunity, because it held that the issue in the litigation—the Department's promulgation of the 1993 Rule—was not a quasi-judicial function. The court concluded that the private attorney general doctrine applied, reasoning that the litigation between the parties directly implicated constitutional interests. The court explained that

> the constitution mandates that the legislature keep track of water rights. The legislature passed the Water Use Act to breath[e] life into that mandate. However, [the Department]'s rule conflicted with the statute which codifies the protections guaranteed in the constitution. While decided on statutory grounds, this Court's Order [on the Coalition's petition for judicial review] is explicit in integrating the constitutional rationale underlying the decision.

The court concluded that the Coalition "qualifies for attorney fees under the private attorney general doctrine because it bore a significant and necessary burden to vindicate all Montanans' constitutional water rights in a suit against the party which created the invalid rule." The parties then stipulated to attorney fees in the amount of $100,000, but agreed that the Department would not pay the fees or appeal the District Court's order on fees until this Court resolved the appeal in *Clark Fork I.*

**STANDARDS OF REVIEW**

¶9 We review for abuse of discretion a district court's ruling granting or denying attorney fees under the private attorney general doctrine. *Gateway Vill., LLC v. Mont. Dep't of Envtl. Quality*, 2015 MT 285, ¶ 15, 381 Mont. 206, 357 P.3d 917; *W. Tradition*

4

*P'ship v. Att'y Gen. of Mont.*, 2012 MT 271, ¶ 7, 367 Mont. 112, 291 P.3d 545; *Baxter v. State*, 2009 MT 449, ¶ 46, 354 Mont. 234, 224 P.3d 1211. A district court's determination whether legal authority exists for an award of attorney fees is a conclusion of law, which we review for correctness. *Mlekush v. Farmers Ins. Exch.*, 2015 MT 302, ¶ 8, 381 Mont. 292, 358 P.3d 913.

## DISCUSSION

¶10    *Whether the Coalition was entitled to recover attorney fees following its successful challenge to the Department's 1993 Rule.*

¶11    The Department argues that the District Court abused its discretion in granting the Coalition's motion for attorney fees under the private attorney general doctrine. It contends that the private attorney general doctrine does not apply, in part because the Coalition did not vindicate important constitutional interests. The Department contends also that the quasi-judicial immunity doctrine protects it from liability for attorney fees because the Coalition's challenge was based on the hearing examiner's discretionary decision to deny the Coalition's petition—a quasi-judicial act.

¶12    The Coalition argues that the District Court rightly determined that the private attorney general doctrine applied to its successful challenge of the Department's rule. The Coalition asserts that its litigation vindicated constitutional interests articulated in Article IX, Section 3, of the Montana Constitution, which provides for the protection of existing water rights and water resources and requires the Legislature to regulate and administer water rights in the state. The Coalition argues further that the quasi-judicial immunity doctrine does not shield the Department from liability because the litigation

5

concerned the Department's promulgation of the 1993 Rule—an administrative act—and not the quasi-judicial act of the hearing examiner's decision.

¶13 An administrative agency may promulgate rules only within the bounds set by the Legislature. *See Clark Fork I*, ¶ 25 (stating that "[r]ules adopted by administrative agencies which conflict with statutory requirements or exceed authority provided by statute[ ] are invalid" (citation and internal quotations omitted)). Agency rules must be "consistent and not in conflict with the statute" and must be "reasonably necessary to effectuate the purpose of the statute." *Clark Fork I*, ¶ 25 (quoting § 2-4-305(6), MCA). We determined in *Clark Fork I* that the Department's 1993 Rule conflicted with the Act and was thus invalid. *Clark Fork I*, ¶ 28. The District Court agreed with the Coalition that its success in the litigation justified an award of attorney fees.

¶14 Montana follows the American Rule, under which "'a party in a civil action is generally not entitled to [attorney] fees absent a specific contractual or statutory provision.'" *Bitterroot River Protective Ass'n v. Bitterroot Conservation Dist.*, 2011 MT 51, ¶ 20, 359 Mont. 393, 251 P.3d 131 (hereafter "*BRPA III*") (quoting *Montanans for the Responsible Use of the Sch. Trust v. State ex rel. Bd. of Land Comm'rs*, 1999 MT 263, ¶ 62, 296 Mont. 402, 989 P.2d 800 (hereafter "*Montrust*")). There are limited "equitable exceptions" to this rule. *W. Tradition P'ship*, ¶ 13; *Montrust*, ¶ 64. Among them is the private attorney general doctrine. *W. Tradition P'ship*, ¶ 13; *BRPA III*, ¶ 20. "That doctrine applies when the government, for some reason, fails to properly enforce interests which are significant to its citizens." *Gateway Vill., LLC*, ¶ 12 (citation and internal quotations omitted).

¶15   When determining whether to award fees under the private attorney general doctrine, we consider: "(1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, [and] (3) the number of people standing to benefit from the decision." *Montrust*, ¶ 66; *accord BRPA III*, ¶ 20; *W. Tradition P'ship*, ¶ 14. "We also consider whether an award of fees would be unjust under the circumstances." *W. Tradition P'ship*, ¶ 14 (citing *Finke v. State ex rel. McGrath*, 2003 MT 48, ¶ 33, 314 Mont. 314, 65 P.3d 576); *accord BRPA III*, ¶ 20. We have held that fees under the private attorney general doctrine may be awarded "only in litigation vindicating constitutional interests." *Am. Cancer Soc'y v. State*, 2004 MT 376, ¶ 21, 325 Mont. 70, 103 P.3d 1085 (citing *Montrust*, ¶ 66). We have invoked the private attorney general doctrine sparingly. *W. Tradition P'ship*, ¶ 13.

¶16   Decisions awarding fees under the private attorney general doctrine illustrate its narrow application. In *Montrust*, we addressed the validity of several statutory provisions concerning the administration and disposition of school trust lands that the federal government granted to the state. *Montrust*, ¶¶ 1-9. We noted that the Montana Constitution required the State to act as trustee of the lands. *Montrust*, ¶¶ 13-14. The Constitution provided guidelines for the State's disposition of these lands and required, among other things, that the State obtain "the full market value" of any of the lands of which it chose to dispose. *Montrust*, ¶¶ 16-17. We held that a number of the challenged statutory provisions permitted the State to violate its fiduciary duties as trustee of the lands and to dispose of the lands for less than their full market value, in violation of the

7

Constitution. *Montrust*, ¶¶ 22, 23, 32, 42, 51, 58. We concluded that Montrust had "litigated important public policies that are grounded in Montana's Constitution," that the State had not disputed the necessity of private enforcement or Montrust's resultant burden, and that Montrust's litigation had benefitted "a large class: all Montana citizens interested in Montana's public schools." *Montrust*, ¶ 67. We therefore held that Montrust was entitled to fees under the private attorney general doctrine. *Montrust*, ¶ 69.

¶17 In *BRPA III*, we affirmed the District Court's award of private attorney general fees. We based our holding on the constitutional underpinnings of our decision in the underlying litigation, *Bitterroot River Protective Ass'n v. Bitterroot Conservation District*, 2008 MT 377, 346 Mont. 507, 198 P.3d 219 (hereafter "*BRPA II*"). In *BRPA II*, the plaintiff and appellant had challenged the validity of two statutes: the Natural Streambed and Land Preservation Act of 1975 (the "310 Law") and the Stream Access Law. *BRPA II*, ¶¶ 1-4. We noted in that case that the 310 Law was "one of a comprehensive set of laws enacted by the Legislature to accomplish the goals of the constitution, including Article IX, section 1, which requires legislative provision of remedies to prevent depletion and degradation of natural resources." *BRPA II*, ¶ 28 (citation and internal quotations omitted). We noted also that the Stream Access Law had its origins in Article IX, Section 3(3) of the Montana Constitution, which provides that waters within the state "are the property of the state for the use of its people and are subject to appropriation for beneficial uses as provided by law." *BRPA II*, ¶ 51 (citation and internal quotations omitted).

8

¶18 We noted in *BRPA III* that our interpretation of the 310 Law in the prior case "was expressly premised upon its constitutional purpose." *BRPA III*, ¶ 23 (citing *BRPA II*, ¶ 45). We explained that both parties in the litigation in *BRPA II* had proffered "extensive constitutionally-based arguments" regarding the application of the Stream Access Law. *BRPA III*, ¶ 24 (citing *BRPA II*, ¶ 50). We held therefore that "constitutional concerns were integrated into the rationale underlying the decision" in *BRPA II* and that the two statutes at issue "directly implemented constitutional provisions." *BRPA III*, ¶¶ 23, 25. This satisfied "the requirement [under the private attorney general doctrine] that constitutional interests be vindicated to demonstrate the societal importance of the litigation." *BRPA III*, ¶ 26 (citing *Montrust*, ¶ 66).

¶19 In contrast, we have denied private attorney general fees when the litigation, though successful, did not vindicate a constitutional interest. In *Baxter*, we addressed whether physicians who aided patients in dying were protected from prosecution for homicide. *Baxter*, ¶ 3. We explicitly declined to address the physicians' constitutional arguments. *Baxter*, ¶ 10. Instead, we concluded that Montana statutes protect physicians from prosecution so long as they obtain the patients' consent. *Baxter*, ¶ 50. We held that "[o]ur holding today is statute-based. Therefore, without the vindication of constitutional interests, an award of fees under the private attorney general doctrine is not warranted." *Baxter*, ¶ 47.

¶20 Likewise, in *American Cancer Society*, we concluded that the successful party in the litigation was not entitled to private attorney general fees. The petitioners in that case challenged the constitutionality of a recently-enacted law exempting certain

9

establishments from local government smoking ordinances. *Am. Cancer Soc'y*, ¶ 7. The petitioners argued in part that the statute "unconstitutionally deprives local governments and the people of the right of self-government in violation of Article XI, Section 6, of the Constitution of Montana." *Am. Cancer Soc'y*, ¶ 3. We held that the challenged statute "does not set forth a prohibition of self-governing powers," that it "does not preempt any no-smoking ordinances adopted by any self-governing entity," and that it thus "has no force and effect." *Am. Cancer Soc'y*, ¶ 18. We concluded that our holding "amounts to a declaration that [the statute] is ineffectual rather than unconstitutional; therefore, without the vindication of a constitutional interest, this case does not warrant private attorney general fees." *Am. Cancer Soc'y*, ¶ 21.

¶21 In *Clark Fork I*, we addressed whether the Department's 1993 exempt well rule was consistent with the authorizing statute. *Clark Fork I*, ¶ 28. We conducted a statutory analysis of § 85-2-306(3)(a)(iii), MCA, and concluded, "*based upon the plain language of the statute and the stated purpose of the Act*," that "'combined appropriation' refers to the total amount or maximum quantity of water that may be appropriated without a permit and not to the manner in which wells or developed springs may be physically connected." *Clark Fork I*, ¶ 24 (emphasis added). We held that the 1993 Rule's definition of "combined appropriation" was "inconsistent with the plain language of § 85-2-306(3)(a)(iii), MCA," and with the "stated statutory purpose of the Act" because "it engrafted an additional requirement on the exempt well statute that wells or developed springs be 'physically manifold into the same system.'" *Clark Fork I*, ¶ 28. We determined also that "[t]he term 'combined appropriation' utilized in the original 1987

10

statute has remained intact and unchanged in the subsequent statutory amendments of 1991 and 2013." *Clark Fork I*, ¶ 33. We thus held, "The 1993 Rule is invalid because it conflicts with the plain language of § 85-2-306, MCA, and because the Legislature, as is its prerogative, has not abrogated the original meaning it placed on 'combined appropriation' since the [L]egislature first incorporated the term in 1987." *Clark Fork I*, ¶ 35.

¶22 This case differs in a material respect from *BRPA III*, where "constitutional concerns were integrated into the rationale underlying the decision." *BRPA III*, ¶ 25. The issue addressed in *Clark Fork I* was purely an issue of statutory interpretation— whether the Department's 1993 Rule conflicted with § 85-2-306(3)(a)(iii), MCA. *Clark Fork I*, ¶ 35. The case did not address whether the 1993 Rule implicated or conflicted with any constitutional provisions. There were no constitutional concerns "integrated into the rationale," *BRPA III*, ¶ 25, and the Coalition did not litigate "important public policies . . . grounded in Montana's Constitution," *Montrust*, ¶ 67. Although the Act itself implements the mandates of Article IX, Section 3, of the Montana Constitution, the Department's rule is a step removed. The litigation did not "directly implement[ ] constitutional provisions," but centered only on construction of the Act. *BRPA III*, ¶ 23. Under the Coalition's argument, because water rights are an important constitutional interest, virtually any case challenging the Department's administration of the Act could subject the agency to a potential fee award.

¶23 Because the decision in the underlying case was "statute-based," *Baxter*, ¶ 47, the Coalition is not entitled to fees under the private attorney general doctrine, *Am. Cancer*

11

*Soc'y*, ¶ 21; *W. Tradition P'ship*, ¶ 14. We do not address whether the Coalition satisfied the remaining factors of this doctrine, because its failure to show that the litigation vindicated constitutional interests is dispositive. *See Am. Cancer Soc'y*, ¶ 21; *Baxter*, ¶ 47. The District Court abused its discretion in concluding that the Coalition could recover fees under the private attorney general doctrine. Because we reverse on this ground alone, we need not address the Department's argument on quasi-judicial immunity. *See Sikorski v. Johnson*, 2006 MT 228, ¶ 26, 333 Mont. 434, 143 P.3d 161 (holding that the State was not liable because it had no duty, and concluding that it was therefore unnecessary to reach the State's quasi-judicial immunity argument).

## CONCLUSION

¶24 The District Court's order granting the Coalition's motion for attorney fees is reversed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR

Justice Laurie McKinnon, specially concurring.

¶25 The prevailing party in a civil action against a state agency is entitled to reasonable attorneys' fees only if the court finds that "the claim or defense of the . . . agency that brought or defended the action was frivolous or defended in bad faith." Section 25-10-711, MCA. Based on the language of § 25-10-711, MCA, a determination

12

that the DNRC did not act in bad faith or defend this litigation frivolously is dispositive and precludes an award of attorneys' fees against the DNRC. In contrast, whether the DNRC acted in bad faith is only one of several factors to be considered in determining if the circumstances support an award of fees pursuant to the private attorney general doctrine, an equitable exception to the American Rule. The Court's analysis, therefore, must necessarily include consideration of § 25-10-711, MCA. Consistent with our precedent, we recently employed such an analytical framework in *Mont. Immigrant Justice Alliance v. Bullock*, 2016 MT 104, 383 Mont. 318, 371 P.3d 430. I would do so as well here. If the DNRC pursued its defense of the 1993 Rule in good faith, then such a determination is conclusive and attorney fees may not be assessed against the agency. As the District Court failed to address § 25-10-711, MCA, its conclusions of law were incorrect. Further, based upon the procedural history of this litigation, any determination by the District Court that it was "just" to assess attorney fees against the DNRC because it "failed to promulgate a valid rule" was an abuse of discretion.

¶26 In *Mont. Immigrant Justice Alliance*, we considered a challenge to Legislative Referendum 121 (LR 121), which denied certain state services to individuals defined by the law to be "illegal aliens." Montana Immigrant Justice Alliance (MIJA) requested attorneys' fees pursuant to the private attorney general doctrine. We applied the provisions of § 25-10-711(1)(b), MCA, explaining that attorney fees are recoverable against the state only if the state's claims or defenses were frivolous or pursued in bad faith. "A claim or defense is frivolous or in bad faith when it is outside the bounds of legitimate argument on a substantial issue on which there is a bona fide difference of

opinion." *Mont. Immigrant Justice Alliance*, ¶ 48, citing *W. Tradition P'ship*, ¶ 10. We held that the Attorney General was defending, as his duty required, an enactment passed by 80 percent of the voting citizens of Montana and that the topic was important to a large number of Montanans. Observing that there were bona fide differences of opinion, we concluded that the State's defense of LR 121 "was not frivolous or in bad faith." *Mont. Immigrant Justice Alliance*, ¶ 49. We held that MIJA's claim for attorneys' fees pursuant to the private attorney general doctrine was not allowed under § 25-10-711(1)(b), MCA. *Mont. Immigrant Justice Alliance*, ¶ 49.

¶27 Similarly, in *Ostergren v. Dept. of Rev.*, 2004 MT 30, 319 Mont. 405, 85 P.3d 738, we concluded that although the taxpayer prevailed against the Department of Revenue (DOR) in that its property was valued in accordance with taxpayer's arguments, as opposed to DOR, the taxpayer was not entitled to fees if the DOR's claim did not rise to "the level of frivolity or bad faith." *Ostergren*, ¶ 24. The 1997 Montana Legislature passed Senate Bill 195 which required reappraisals of class three, four, and ten properties statewide and caused significant market value increases. The taxpayer asserted DOR willfully mishandled the property assessment statute, acted in bad faith in refusing to refund taxes, and DOR had ignored 1996 values in its reappraisals. We determined that there was a disagreement on the valuation of property and that the appeals process is available for such situations. "Simply because a taxpayer does not agree with the DOR's valuation of property does not entitle a taxpayer to attorney fees and costs." *Ostergren*, ¶ 25. *See also Dearborn Drainage Area*, 240 Mont. at 43, 782 P.2d at 900 (the Department of Fish, Wildlife and Parks "acted in good faith and in accordance with

constitutional and statutory mandates" in representing the public's recreational use rights in the waters of Bean Lake); *W. Tradition P'ship*, ¶ 20 ("While the Attorney General did not prevail, it is difficult to conclude that his arguments were frivolous . . . .").

¶28   Although both the language of § 25-10-711, MCA, and our precedent applying it are clear, this Court, by failing to mention § 25-10-711, MCA, appears to have accepted the Coalition's argument that § 25-10-711, MCA, is a statute-based fee provision which is not at issue in this case.   The Coalition maintains that they are not seeking reimbursement for attorneys' fees pursuant to § 25-10-711, MCA, but rather are pursuing attorneys' fees under the four factor test of the private attorney general doctrine which, the Coalition argues, "provides its own, independent basis for an award of attorneys' fees separate from § 25-10-711, MCA."   The Coalition ignores that "[t]he statutes establish the law of this state respecting the subjects to which they relate, and their provisions and all proceedings under them are to be liberally construed . . . ."   Section 1-2-103, MCA. Section 25-10-711(1)(b), MCA, specifically declares that an agency of the state may only be required to pay costs if the agency has brought or defended an action which was frivolous or pursued in bad faith.[1]

¶29   I would construe § 25-10-711, MCA, and the private attorney general doctrine consistently, as we attempted to do in *W. Traditions P'ship.*   Whether an agency acted

---

[1]   In *Montrust*, while recognizing the district court denied fees on the basis of § 25-10-711, MCA, we failed to reconcile § 25-10-711, MCA, with our newly adopted private attorney general doctrine.   Thus, we granted attorney fees against an agency absent a showing of bad faith or frivolity.   Although we have subsequently described *Montrust* as not a "garden variety" constitutional challenge to a legislative enactment, the tension between *Montrust* and § 25-10-711(1)(b), MCA, still remains.   *See W. Traditions P'ship*, ¶ 19.

frivolously or in bad faith are guideposts within which to assess—under the particular facts, procedural history, and relevant principles of law of the case—whether an award of attorneys' fees under the private attorney general doctrine is equitable and consistent with § 25-10-711, MCA. *W. Traditions P'ship*, ¶ 18. Accordingly, the "frivolous or in bad faith" standard set forth in § 25-10-711, MCA, may not be ignored when the action is against the state or an agency of the state, regardless of what equitable theory the prevailing party chooses to advance. The private attorney general doctrine must be consistent with the legislature's determination of the standard to be employed when a state agency is a party.

¶30 In these proceedings, the procedural history is significant in assessing the DNRC's actions in the context of the private attorney general doctrine and § 25-10-711, MCA. Sixteen years after the adoption of the 1993 Rule, the Coalition filed a Petition for Declaratory Ruling and requested the DNRC declare the 1993 Rule invalid because it was inconsistent with the Montana Water Use Act. The DNRC determined that the Petition presented a controversy of statewide importance and appointed a hearing examiner. Interested persons were provided an opportunity to file statements of position and briefs. Following a public hearing, the DNRC's hearing examiner issued his Declaratory Ruling on August 17, 2010, concluding the 1993 Rule was consistent with the plain language of § 85-2-306, (3), MCA. However, the hearing examiner determined that the 1993 Rule defining "combined appropriation" was not the best definition that could be provided and consequently committed the DNRC to redefine the term through rulemaking.

¶31 In September 2010, the Coalition filed the instant Petition for Judicial Review. In November, the parties signed a stipulated agreement to revise the definition of combined appropriation and acknowledged that the Coalition would participate in rulemaking. The stipulation also provided that if the term "combined appropriation" was defined by the 62nd Legislature, the DNRC's rulemaking efforts would cease. The 62nd Legislature passed House Bill 602, which authorized a formal study of exempt wells by the Water Policy Interim Committee (WPIC) and prohibited DNRC rulemaking until after October 1, 2012. As a result, the parties entered into a modified agreement which extended timelines and rulemaking to July 2013.

¶32 In response to the 2012 WPIC Report, the 63rd Legislature passed two bills in 2013: Senate Bill 19, which essentially codified the 1993 Rule, and Senate Bill 346, which authorized a stream depletion zone in areas where modeling demonstrated that exempt wells were having an impact on senior water users. Governor Bullock vetoed Senate Bill 19 and it did not become law. The DNRC next provided notice in August 2013 of a proposed rule revising the definition of combined appropriation. A public hearing was scheduled for September 2013. The WPIC submitted a letter of objection to the DNRC's proposed rule asserting that it was inconsistent with its 2012 Report and the legislature's intent. The Environmental Quality Council (EQC) also filed a formal objection to the DNRC's proposed rule. Pursuant to §§ 2-4-305(6) and 75-1-324(10), MCA, an objection by EQC delays effectiveness of the rule until after final adjournment of the next regularly scheduled session. Accordingly, the DNRC withdrew the proposed rule following the public hearing in September.

¶33    In December 2013, the DNRC published notice of a second proposed rule.  Again, the WPIC and EQC objected to the proposed rule.   In response, the DNRC withdrew its second proposed rule and, recognizing that judicial review was the only way to resolve the controversy between the 1993 Rule and its impact on senior water rights, proceeded with the Coalition to reopen the Petition.   During this entire period, the hearing examiner's determination that the 1993 Rule was consistent with § 85-2-306(3), MCA, remained valid.  It was not until October 17, 2014, when the District Court reversed the hearing examiner and concluded that the Declaratory Rulings' interpretation of the 1993 Rule was incorrect, that the 1993 Rule was held invalid.

¶34    The controversy over exempt wells, the impacts on senior water users, and combined appropriations continues.  The 64th Legislature again passed legislation to protect combined appropriations consistent with 1993 Rule.  Legislation codifying the 1993 Rule and further defining what qualifies for the exemption passed through both chambers of the 65th Legislature, but was again vetoed by Governor Bullock.  Given this procedural history and the complexity of crafting a solution, it would be inequitable to hold the DNRC responsible for not having been able to craft a rule when two legislatures, interim committees, and other stakeholders were also unable to do.  The DNRC's reliance on the hearing examiner's Declaratory Ruling and subsequent efforts to conduct rulemaking, culminating in two proposed rules, cannot be characterized as defending or asserting claims in bad faith or which are frivolous.  I would thus conclude that pursuant to the provisions of § 25-10-711, MCA, and the equitable considerations underlying the

private attorney general doctrine, that it would be inequitable to award the Coalition attorneys' fees.

¶35 The foregoing analysis is how I would resolve the issue of whether the Coalition is entitled to attorneys' fees. I do not agree with the Court that resolution of the dispute should be on the basis of the first factor of the private attorney general doctrine; that is, that *Clark Fork I* did not involve a public policy of significant importance to Montanans which was void of any underlying constitutional considerations. We stated in *Clark Fork I*:

> Based upon the plain language of the statute, it is evident that the intent of the Legislature in enacting subsection (3)(a)(iii) was to ensure that, when appropriating from the same source, only a de minimus *quantity* of water, determined by the Legislature to be 10 acre-feet per year, could be lawfully appropriated without going through the rigors of the permitting process. An exception to the exemption for quantities exceeding 10 acre-feet per year, regardless of flow rate and number of wells or developed springs utilized for the appropriation, protects other water rights utilizing the same water source. This is consistent with the purpose of the Act as a remedial statute designed to strictly adhere to the prior appropriation doctrine and to provide for the "administration, control, and regulation of water rights . . . and confirm all existing water rights . . . ." Section 85-2-101(2), (4), MCA. We have explained that "the Water Use Act was designed to protect senior water rights holders from encroachment by junior appropriators adversely affecting those senior rights." *Mont. Power Co. v. Carey*, 211 Mont. 91, 98, 685 P.2d 336, 340 (1984). This fundamental purpose is reflected throughout the Act and many of the subsections of the Act begin with a policy declaration stating that the protection of senior water rights and the prior appropriation doctrine is the Act's core purpose. *See, e.g.*, § 85-1-101(4), MCA (the Act's purpose is to "protect existing uses"); § 85-2-101(4), MCA (it is "a purpose of this chapter to recognize and confirm all existing rights"); § 85-2-101(4), MCA (the purpose of permitting is to "provide enforceable legal protection for existing rights"). Accordingly, based upon the plain language of the statute and the stated purpose of the Act, we conclude that "combined appropriation" refers to the total amount or maximum quantity of water that may be appropriated without a permit and not to the manner in which wells or developed springs may be physically connected.

19

*Clark Fork I*, ¶ 24. In this respect, the District Court was correct in its conclusion that the Coalition's challenge to the 1993 Rule was an important matter of public policy that vindicated constitutional interests.

¶36 We stated in *BRPA III*, that a case need not involve a constitutional claim in order to vindicate constitutional interests. *BRPA III*, ¶ 25. Cases involving statutory interpretation may nonetheless qualify for private attorney general fees when constitutional concerns are vindicated by statutory compliance. Here, our interpretation of the validity of the 1993 Rule was premised on the statute's constitutional purpose and its impact on senior water rights. The rights the Montana Water Use Act are designed to protect are explicitly recognized in Article IX, Section 3(1), of the Montana Constitution. The procedural history of this case alone demonstrates that the litigation and legislative efforts revolved around substantial policy issues and concerns over protecting the existing rights of senior water users. I, accordingly, do not agree with the Court that the Coalition did not litigate important policies grounded in the Montana Constitution and I would not decide this matter upon that basis.

¶37 Based on the foregoing analysis, I would conclude that § 25-10-711(1)(b), MCA, and equitable considerations of the private attorney general doctrine preclude an award of attorneys' fees. To the extent the Court's analysis differs, I specially concur.


/S/ LAURIE McKINNON